[Nos. 29617-5-I; 33049-7-I;   Division One.   August 1, 1994.]
29271-4-I.

THE STATE OF WASHINGTON, *Respondent*, v. KEVIN JOE
BRUNSON, *Appellant*.

*In the Matter of the Personal Restraint of* KEVIN JOE
BRUNSON, *Petitioner*.

THE STATE OF WASHINGTON, *Respondent*, v. ERIC
EUGENE WEST, *Appellant*.

*Andrew P. Zinner* and *Lorraine Lee* of *Washington Appellate Defender Association,* for appellants.

*Norm Maleng, Prosecuting Attorney,* and *Peter Goldman, Deputy,* for respondent.

BECKER, J. — These cases, linked and now consolidated on appeal, raise two constitutional issues: First, does the giving of a standard inference instruction in a burglary case violate due process by allowing the jury to infer criminal intent solely from the fact of unlawful entry?

Second, if the inference could have been used by the jury as the sole and sufficient basis for establishing the element of intent, must the inference of intent follow from the fact of unlawful entry beyond a reasonable doubt?

We answer the first question in the negative. The second one we find unnecessary to reach following our Supreme Court's recent analysis of the due process requirements pertaining to inferences in *State v. Hanna,* 123 Wn.2d 704, 871 P.2d 135 (1994).

### BRUNSON

On an early Sunday morning in March 1991, police investigated a break-in at the Burien Agency Rent-a-Car. Someone had gained entry by throwing a rock through the glass door. Inside, the rooms had been rifled through and a filing cabinet jimmied. A dollar's worth of change had been taken.

Fingerprints taken from the filing cabinet turned out to belong to Kevin Joe Brunson, as police discovered when they arrested him the following month on unrelated charges. Confronted with the fingerprints, Brunson admitted, "All right, you got me. I did that one." He was charged with second degree burglary.

## West

At about 6:15 p.m. on May 23, 1991, Karen Bowman went to her kitchen to investigate what sounded like dishes clanking. She saw a man coming through her kitchen window head first. He was on the counter top with his hands straddling the kitchen sink. When Bowman screamed, the man retreated to her yard, saying, "Quiet, lady, I just wanted to use the phone."

Bowman called 911, supplying a description which enabled the police to apprehend West a few minutes later. She then positively identified West as the man who had entered her kitchen. West was charged with residential burglary.

## Challenged Instruction

At each trial, the court gave the jury not only the standard circumstantial evidence instruction but also the pattern instruction on the permitted inference in burglary cases:

> A person who enters or remains unlawfully in a building may be inferred to have acted with intent to commit a crime against a person or property therein . . .. This inference is not binding upon you and it is for you to determine what weight, if any, such inference is to be given.

WPIC 60.05. Each Defendant was convicted as charged and each of them now assigns error to the giving of this instruction.

On appeal, the reviewing panel of judges chose to consolidate both cases pursuant to RAP 3.3(b).

## I

Burglary consists of two elements: unlawfully entering or remaining on someone else's premises, and intent to commit a crime against person or property while on those premises.

RCW 9A.52.040 explicitly permits inference of the necessary element of intent from the fact of unlawful entry.

The pattern inference instruction as given in these cases is almost always constitutionally permissible, although its use is discouraged. *State v. Johnson*, 100 Wn.2d 607, 619-20, 674 P.2d 145 (1983).[1] The instruction is regarded as a permissive inference rather than a mandatory presumption. *State v. Jackson*, 112 Wn.2d 867, 875-76, 774 P.2d 1211 (1989). The applicable due process standard requires that the proved fact (unlawfully entering or remaining) permits a reasonable mind to find the inferred fact (criminal intent) more likely than not. *Jackson*, at 875. In burglary cases the strength of the inference is supported by common knowledge and experience. "The noncriminal reasons for unlawfully entering a dwelling are few." *State v. Bishop*, 90 Wn.2d 185, 189, 580 P.2d 259 (1978).

Defendants rely principally on the due process analysis in two recent cases, *Schwendeman v. Wallenstein*, 971 F.2d 313 (9th Cir. 1992) and *State v. Delmarter*, 68 Wn. App. 770, 845 P.2d 1340 (1993).

The premise of the Defendants' argument is that the inference instruction permitted each jury to determine the element of criminal intent exclusively by use of the inference, without regard to any other evidence of intent. They claim this renders the instruction constitutionally deficient, relying on *Schwendeman*. Alternatively, relying on *Delmarter*, they contend it follows from their premise that the strength of the inference should be measured "beyond a reasonable doubt" rather than "more likely than not", a test which they claim it does not meet.

In *State v. Hanna*, 123 Wn.2d 704, 871 P.2d 135 (1994), an opinion filed after the oral arguments in the cases before us, the court reviewed the requirements of due process with respect to the drawing of inferences. Due process requires that

---

[1]The State at oral argument candidly admitted that the intent inference is routinely sought in burglary cases, notwithstanding the caution in *State v. Johnson*, 100 Wn.2d 607, 620, 674 P.2d 145 (1983) that the instruction is "rarely necessary and usually ill advised".

the State bear the burden of persuasion of every essential element of a crime beyond a reasonable doubt. Inferences and presumptions are evidentiary devices which the State may use to meet its burden of proof. A permissive inference is one which permits but does not require the jury to infer an element of the offense from a proved fact. *Hanna*, at 710. *Schwendeman, Delmarter*, and *Hanna* are all cases which analyze the strength of the permitted inference of criminal intent from the fact of driving at an excessive speed. All three cases rely on *County Court of Ulster Cy. v. Allen*, 442 U.S. 140, 60 L. Ed. 2d 777, 99 S. Ct. 2213 (1979).

*Ulster* regards as critical the distinction between a permissive presumption — one "on which the prosecution is entitled to rely as one not necessarily sufficient part of its proof" — and a mandatory presumption — one "which the jury must accept even if it is the sole evidence of an element of the offense." *Ulster*, at 166. *Ulster* continues with the following language which has inspired the revisiting of inference instructions:

> In the latter situation, since the prosecution bears the burden of establishing guilt, it may not rest its case entirely on a presumption unless the fact proved is sufficient to support the inference of guilt beyond a reasonable doubt. . . . As long as it is clear that the presumption is not the sole and sufficient basis for a finding of guilt, it need only satisfy the [more likely than not] test[.]

*Ulster*, at 167.

The principle incorporated in *Schwendeman* is that whenever an inference — even one which, like the burglary instruction at issue here, is by its own terms nonbinding — may be used by the jury as a sole and sufficient basis for finding an element of the crime, the court must scrutinize it independently of the rest of the evidence in the case to ensure that it meets the "more likely than not" test. In *Schwendeman*, the court reversed the conviction reasoning that the challenged instruction allowed the jury to find recklessness by considering speed alone, in isolation from the rest of the evidence. Therefore, the strength of the inference had to be measured solely with respect to the foundational evidence as to speed.

The court concluded that the inference of recklessness did not follow more likely than not from a speed of 37 to 50 m.p.h. in a 25 m.p.h. zone.

*Delmarter*'s analysis and conclusion are similar, except that *Delmarter* imposes a reasonable doubt test. *Delmarter*, at 783-84. The reversal in *Delmarter* resulted from the court's conclusion that driving 40 to 45 m.p.h. in a 25 m.p.h. zone does not by itself support beyond a reasonable doubt the inference of "willful or wanton disregard for the lives or property of others". *Delmarter*, at 789.

## II

The Defendants contend that *Schwendeman* compels the conclusion that the burglary inference of intent instruction is inherently unconstitutional because the jury may find intent by considering unlawful entry alone, in isolation from the rest of the evidence. We disagree with this interpretation of *Schwendeman*. What *Schwendeman* holds is that the strength of the inference of recklessness from speed must be evaluated considering only what the record shows about speed, even when there is other evidence of recklessness.

*Hanna* is not inconsistent with the analysis in *Schwendeman*. In *Hanna* the inference of recklessness was held to follow more likely than not from evidence of a speed of 80 to 100 m.p.h.

As applied to burglary cases, the analysis in *Hanna* and *Schwendeman* does no more than reaffirm established precedent. The court in a particular case examines the inference of criminal intent to see if, more likely than not, it follows from the particular facts that establish unlawful entry. If so, the instruction meets the requirements of due process.

The foundational fact of unlawful entry was shown with respect to Brunson by the presence of his fingerprints on the filing cabinet. The manager testified he did not know Brunson and had never given him permission to enter the building. West's unlawful entry through the kitchen window was observed by an eyewitness. We can say with assurance that the inference of criminal intent followed in each case more

likely than not solely from the foundational facts of unlawful entry.

## III

Defendants next contend that the strength of the inference must be measured by the reasonable doubt standard, a test which they say it does not meet.

*Hanna* acknowledges the suggestion in *Ulster* that where the State relies solely on an inference to prove an element of the crime, the inferred element must follow from the proved fact beyond a reasonable doubt. *Hanna*, 123 Wn.2d at 711. In *Hanna*, the court found it unnecessary to decide whether to apply the more stringent "reasonable doubt" test, and explicitly did not review *Delmarter*'s holding on this issue. *Hanna*, at 711. There was other evidence before the jury besides excessive speed from which the elemental fact of recklessness could be inferred. In such situations, where the record and all the instructions establish that the inference is not the "sole and sufficient" basis for a finding of guilt, the constitutionality of the inference is reviewed under the "more likely than not" test. *Hanna*, at 711.

The court further held, overruling *Delmarter* in this respect, that in evaluating whether the facts support the inference, only the prosecution's foundational evidence need be examined, because the inference is part of the prosecution's proof. If the jury believes the defendant's evidence, it can reject the inference altogether. *Hanna*, at 712-13.

With *Hanna*'s analysis in mind, it is unnecessary for us to decide whether the inference of criminal intent from the fact of unlawful entry needs to meet a "reasonable doubt" test. The inference was not the sole basis for the finding of guilt in either of the cases before us. Brunson's confession — "All right, you got me. I did that one" — supplied persuasive evidence of his criminal intent outside any inference the jury may have drawn from the presence of his fingerprints on the filing cabinet.

In West's case, the jury likewise was able to consider additional evidence of his criminal intent beyond the mere fact of

his unlawful entry. When confronted by Bowman, he said he only wanted to "use the phone". This is not an innocent statement even taken at face value. An unpermitted use of the telephone nevertheless amounts to a theft of services and therefore West's stated intention was an admission of his criminal intent, confirmed by his hasty retreat after being seen.

In summary, there is no inherent problem with permitting a jury to infer criminal intent solely from the fact of unlawful entry. Where the inference from unlawful entry is not the only evidence of criminal intent before the jury, the rationality of the inference is analyzed on a more likely than not standard. Whether this standard would be higher in a case lacking in other evidence of intent is a question we do not decide.[2]

Brunson's petition is denied. Both judgments are affirmed.

SCHOLFIELD and KENNEDY, JJ., concur.

Review granted at 125 Wn.2d 1020 (1995).

---

[2]The foregoing discussion assumes, as do all authorities considered, that the inference is truly permissive rather than mandatory. In that regard, the following alternative formulation of WPIC 60.05 in our judgment more clearly communicates that the jury has discretion to decide not only how much weight to give the inference, but whether to draw it in the first place:

A person who enters or remains unlawfully in a building may [or may not] be inferred to have acted with intent to commit a crime against a person or property therein. [If you decide to draw that inference,] it is for you to determine what weight, if any, such inference is to be given.

(Brackets indicate additional words.)