[Nos. 62141-1; 62645-6. En Banc. November 9, 1995.]

THE STATE OF WASHINGTON, *Respondent*, v. KEVIN JOE BRUNSON, *Petitioner*.

*In the Matter of the Personal Restraint Petition of* KEVIN JOE BRUNSON, *Petitioner*.

THE STATE OF WASHINGTON, *Respondent*, v. ERIC EUGENE WEST, *Petitioner*.

THE STATE OF WASHINGTON, *Respondent*, v. CHAD R. ZACHARIASEN, *Petitioner*.

*Kevin J. Brunson*, pro se; *Lorraine Lee* and *Elaine L. Winters* of *Washington Appellate Defender Association; Nielsen & Acosta,* by *Eric J. Nielsen;* and *Richard R. Tassano* of *Washington Appellate Project,* for petitioners.

*Norm Maleng, Prosecuting Attorney*, and *Peter R. Goldman, Deputy*, for respondent.

GUY, J. — Trial courts in three burglary cases instructed their juries that they may make the following inference: a person who enters or remains unlawfully in a building intends to commit a crime against people or property inside. Defendants argue the inference is unconstitutional. The court of appeals upheld the validity of the instruction, and we affirm.

## FACTS
### Kevin Brunson

At 3:38 A.M. on March 24, 1991, a police officer found a three-foot hole in the front door of Agency Rent-a-Car in Burien. Inside, all the rooms were "in disorder," appearing as if "somebody had gone through everything."

The intruder had moved a file cabinet into the hallway and jimmied it open. Police lifted ten latent prints from the cabinet, eight of which were worthless. The remaining two prints matched those of Defendant Kevin Brunson. The manager of Agency Rent-a-Car testified that approximately a dollar's worth of change was gone, but acknowledged on cross-examination that he had not reported anything missing to police detectives.

On April 9, 1991, police in Kent, Washington, arrested Brunson on unrelated charges. Two days later, a detective from King County questioned Brunson about the Burien burglary. Brunson denied responsibility for the break-in. During the interrogation, the detective answered a phone call. When the detective put down the receiver, he told

Brunson that fingerprints found on the file cabinet matched Brunson's. According to the detective, Brunson then said something like, "[A]ll right, you got me. I did that one." The detective acknowledged on cross-examination these were not Brunson's exact words.

At the close of Brunson's trial, the court gave WPIC 60.05, the pattern inference of intent instruction:

> A person who enters or remains unlawfully in a building may be inferred to have acted with intent to commit a crime against a person or property therein. This inference is not binding upon you and it is for you to determine what weight, if any, such inference is to be given.

Clerk's Papers at 33. The trial court also gave a general jury instruction on circumstantial evidence.

> Evidence may be either direct or circumstantial. Direct evidence is that given by a witness who testifies concerning facts which he or she has directly observed or perceived through the senses. Circumstantial evidence consists of proof of facts or circumstances which, according to common experience permit a reasonable inference that other facts existed or did not exist. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. One is not necessarily more or less valuable than the other.

Clerk's Papers at 23 (former WPIC 5.01).

On October 8, 1991, a King County jury found Brunson guilty of second degree burglary. Brunson appealed, and on August 1, 1994, the court of appeals affirmed his conviction. *State v. Brunson*, 76 Wn. App. 24, 877 P.2d 1289 (1994).

### Eric West

On the evening of May 23, 1991, Karen Bowman was alone in her living room when she heard the sound of dishes clanking in the kitchen. She walked to the kitchen and screamed. A man had climbed halfway through her kitchen window and was leaning on the countertop with his hands straddling the kitchen sink.

While Bowman screamed, the man pushed back out the window. Bowman continued to scream as the man picked up a walkman tape recorder in the yard. He turned to her and said, "[Q]uiet lady, I just wanted to use the phone." Bowman saw the man a total of forty-five seconds to a minute while he was approximately seven feet below her and three to four feet away.

Bowman shut the window and called 911. She described the burglar as an African-American male with an "afro," in his late teens, wearing a gray jacket and carrying a walkman. Within minutes, police found Eric West waiting at a nearby bus stop, wearing a gray jacket and working on a walkman. They arrested West and held him in a patrol car.

Another police officer drove Bowman to the scene. Bowman immediately identified West who was sitting in the patrol car some three to four feet away. When the officers took West out of the patrol car, Bowman again identified West as the man who had crawled through her kitchen window.

Bowman and a police officer returned to Bowman's house, where they found several glasses and part of a mortar and pestle from Bowman's kitchen in the yard. They also saw a tree stump, used as a planter, pushed up against the house under the window. The police collected fingerprints, but they were inconclusive.

At trial, the court read the pattern instructions on inference of intent in burglary cases (WPIC 60.05) and use of direct and circumstantial evidence (former WPIC 5.01). The court also instructed the jury on a lesser included charge: first degree criminal trespass. On August 23, 1991, the jury found West guilty of one count of residential burglary.

West appealed, and the court of appeals, after consolidating West's case with Brunson's, affirmed West's conviction. *Brunson*, 76 Wn. App. at 31.

Chad Zachariasen

On the afternoon of October 6, 1991, Lad Williams, resi-

dent manager of an apartment building in the University District of Seattle, noticed a white pickup truck dash into the building's parking garage as another car left. The garage has a gate which only tenants can operate. The truck had waited until a tenant had left and the gate was open. Williams walked to the garage to investigate.

He met the Defendant, Chad Zachariasen, at the white pickup truck, and asked him what he was doing. Zachariasen responded that his girlfriend in apartment three told him he could park there. Williams became suspicious because the building had no apartment three.

Williams saw property belonging to apartment maintenance in the back of the pickup, including a rake, shovel, broom, "shop vac," and painting gear. Next to the pickup was other tenants' property, including two bicycles. Williams noticed Zachariasen's pants and moccasins were wet, and a trail of wet footprints led from a storage shed to the pickup. He told Zachariasen to unload the truck. When he saw his own sunglasses in a coat inside the pickup, Williams became angry and asked Zachariasen how he would like it if Williams stole Zachariasen's truck.

Zachariasen started the truck's engine and attempted to drive away. Williams unplugged the electric garage door opener, blocking the exit. Zachariasen leapt out of the truck and ran through an opening in the fence. Police later discovered that someone had jimmied the doorknob to the storage room and clipped a padlock on the garage door. The white pickup truck belonged to Robert Luark. Luark testified he had loaned the truck to Zachariasen prior to the burglary.

At the close of trial, the State requested the trial court give the pattern instruction on the inference of intent. Defense counsel excepted to the instruction, arguing it was appropriate in cases, unlike this one, where the evidence did not clearly show what action the defendant intended to take inside the building. The court decided not to give the instruction.

In spite of the court's decision, the instruction inadvert-

ently appeared in the court's final set of instructions and the court read it to the jury. Defense counsel asked the court to remove the instruction or, in the alternative, to grant a mistrial. The court conceded giving the instruction was "an unforgiveable [sic] error administratively by the Court," but it did not take out the inference instruction. The court ruled inclusion of the instruction was not prejudicial error.

On March 4, 1992, the jury found Zachariasen guilty of second degree burglary. Zachariasen appealed. On December 8, 1994, the court of appeals affirmed the conviction in an unpublished opinion.

On February 9, 1995, this court granted review of the consolidated cases of Brunson and West. On April 6, 1995, this court granted review of Zachariasen's appeal and consolidated it with that of Brunson and West.

## ISSUES

These consolidated cases challenge the constitutionality of WPIC 60.05, the inference of intent instruction. Defendants raise three issues:

1. Does WPIC 60.05 create a mandatory presumption or a permissive inference?

2. Which standard of proof, beyond a reasonable doubt or more likely than not, governs the connection between the proven fact (entering or remaining unlawfully) and inferred fact (intent to commit a crime inside) in WPIC 60.05?

3. Does the rational connection between proven fact and inferred fact in WPIC 60.05 satisfy the standard of proof?

## ANALYSIS

### Issue 1

Both residential burglary and burglary in the second degree have two elements: (a) entering or remaining unlawfully in a dwelling other than a vehicle, and (b) intent to commit a crime against a person or property

therein. RCW 9A.52.025-.030. To clarify proof of the second element, the Legislature adopted the following inference of intent:

> In any prosecution for burglary, any person who enters or remains unlawfully in a building may be inferred to have acted with intent to commit a crime against a person or property therein, unless such entering or remaining shall be explained by evidence satisfactory to the trier of fact to have been made without such criminal intent.

RCW 9A.52.040. With the exception of the clause following the word "unless," the jury instructions followed the language of the statutory inference.[1]

Defendants claim this inference violates due process by circumventing the jury's responsibility to weigh all the evidence before reaching a verdict.

■ We begin our analysis by deciding whether WPIC 60.05 creates a mandatory or permissive inference. "The threshold inquiry in ascertaining the constitutional analysis applicable to this kind of jury instruction is to determine the nature of the presumption it describes. *See Ulster County Court* v. *Allen*, [442 U.S. 140, 157-60, 99 S. Ct. 2213, 60 L. Ed. 2d 777 (1979)]." *Sandstrom v. Montana*, 442 U.S. 510, 514, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979). Presumptions and inferences generally divide into two categories: mandatory (the jury must find a presumed fact from a proven fact) and permissive (the jury may find a presumed fact from a proven one, but may decide otherwise). Mandatory presumptions create problems of constitutional scope because of their potential for circumventing the State's burden to prove all elements beyond a reasonable doubt. *Sandstrom*, 442 U.S. at 523-24.

■ We conclude that for three reasons the pattern instruction given in these consolidated cases established a permissive inference. First, we have previously ruled:

---

[1]The validity of the "unless" clause is not before us in these consolidated cases.

WPIC 60.05 provides for a permissive inference or presumption, which allows the trier of fact to either infer the elemental fact from proof by the prosecutor, or reject the inference. WPIC 60.05 does not apply to those attempting to enter or remain unlawfully "unless it can at least be said with substantial assurance that the presumed fact is more likely than not to flow from the proved fact on which it is made to depend." *Leary v. United States*, 395 U.S. 6, 36, 23 L. Ed. 2d 57, 89 S. Ct. 1532 (1969). *See also Sandstrom v. Montana*, 442 U.S. 510, 61 L. Ed. 2d 39, 99 S. Ct. 2450 (1979).

*State v. Jackson*, 112 Wn.2d 867, 875, 774 P.2d 1211 (1989).

Second, the language of the instruction is clearly discretionary. The instruction tells the jury it "may" infer criminal intent and "[t]his inference is not binding upon you and it is for you to determine what weight, if any, such inference is to be given." WPIC 60.05. Nothing in the instruction suggests the jury must infer criminal intent if it finds unlawful entry. The jury is free to accept or reject the inference.

Third, no proof exists that the juries considered this inference to the exclusion of all other evidence. Defendants argue instructions on specific inferences diminish the importance of other evidence by narrowing the jury's focus to a few facts.[2] Defendants contend all presumptions, whether labeled mandatory or permissive, operate to narrow artificially a jury's deliberations.

Defendants fail to show the juries disregarded both the intent evidence in the cases and the trial courts' other instructions. As discussed in the next section, this court reviews jury verdicts with the assumption that the jury followed the trial court's directions. Nothing in the record suggests to the contrary.

---

[2]Defendants liken the instruction to the Milgram experiments: the institutional authority of the trial judge encourages the jurors to apply the inference, regardless of what the jurors believe to be true. *See* Charles Collier, Note, *The Improper Use of Presumptions in Recent Criminal Law Adjudication*, 38 Stan. L. Rev. 423, 442-56 (1986).

The inference of intent instruction used in these cases created a permissive inference.

## Issue 2

 We turn next to the standard of proof; namely, whether we must find the inference true beyond a reasonable doubt or more likely than not. The United States Supreme Court has established more likely than not as the standard of proof for permissive inferences. *County Court of Ulster County v. Allen*, 442 U.S. 140, 99 S. Ct. 2213, 60 L. Ed. 2d 777 (1979). After concluding the statutory presumption in *Ulster* was permissive, the Supreme Court held "there is a 'rational connection' between the basic facts that the prosecution proved and the ultimate fact presumed, and the latter is 'more likely than not to flow from' the former." *Ulster*, 442 U.S. at 165 (quoting *Leary v. United States*, 395 U.S. 6, 34, 36, 89 S. Ct. 1532, 23 L. Ed. 2d 57 (1969)); *accord State v. Hanna*, 123 Wn.2d 704, 710, 871 P.2d 135, *cert. denied*, 115 S. Ct. 299 (1994), *writ of habeas corpus granted sub nom. Hanna v. Holden*, No. C94-1565R (W.D. Wash. May 17, 1995).

Therefore, "[w]hen an inference is only part of the prosecution's proof supporting an element of the crime, due process requires the presumed fact to flow 'more likely than not' from proof of the basic fact." *Hanna*, 123 Wn.2d at 710 (quoting *Ulster*, 442 U.S. at 165).

When an inference is the "sole and sufficient" proof of an element, however, the Supreme Court in *Ulster* suggested the reasonable doubt standard would apply. *Ulster*, 442 U.S. at 167. The rationale for the Court's suggestion is straightforward: because the prosecution must prove every element beyond a reasonable doubt, the rational connection contained in a sole and sufficient inference must be true beyond a reasonable doubt. The state may not circumvent its burden of persuasion through exclusive use of a permissive inference.

According to Defendants, the analysis in two cases, *Schwendeman v. Wallenstein*, 971 F.2d 313 (9th Cir. 1992) and

*State v. Delmarter*, 68 Wn. App. 770, 845 P.2d 1340 (1993), requires this court to reevaluate the validity of WPIC 60.05. Defendants contend these opinions raise the appropriate standard of proof to beyond a reasonable doubt.

In *Schwendeman*, the Ninth Circuit held unconstitutional an instruction which permitted juries to infer reckless driving from evidence of speeding. The Ninth Circuit concluded the invalid instruction

> isolated speed as the only circumstance needed to permit the jury to find reckless driving and thereby convict Schwendeman. The jury was told, in effect, that it could ignore all the other evidence, consider only the evidence of Schwendeman's speed, and if it found Schwendeman was exceeding the speed limit, that was enough to convict him—not of speeding, but of reckless driving.
>
> By focusing the jury on the evidence of speed alone, the challenged instruction erroneously permitted the jury to find an element of the crime of which Schwendeman was convicted without considering all the evidence presented at trial.

*Schwendeman*, 971 F.2d at 316. Defendants argue *Schwendeman* applies with equal force to these cases — the inference of intent instruction isolates unlawful entry as the sole fact necessary to prove criminal intent.

In *Delmarter*, the court of appeals also held the reckless driving inference unconstitutional. The court reasoned:

> [W]hen the inference described in the instruction is the only basis, or an alternate basis, for finding an element of the crime charged, the "rational connection" must be such that a rational trier of fact could find the elemental fact from the foundational one beyond a reasonable doubt.

*Delmarter*, 68 Wn. App. at 784. The court concluded the inference at issue created an alternate basis for finding an element and applied the reasonable doubt standard. Because speeding did not result in reckless driving beyond a reasonable doubt, the court of appeals ruled the inference unconstitutional. *Delmarter*, 68 Wn. App. at 789-90.

Defendants make a similar argument here, i.e., if a jury accepts the inference in WPIC 60.05, the prosecution has proven the second element of burglary, intent to commit a crime inside. Because the instruction is an alternate basis for proving an element, Defendants contend under *Delmarter* the court must find the inference true beyond a reasonable doubt.

We reaffirm the appropriate standard of proof in these consolidated cases is that established in *Ulster* — more likely than not. First, the inference was not the "sole and sufficient" evidence of Defendants' intent. *Ulster*, 442 U.S. at 167. For both Brunson and Zachariasen, circumstantial evidence showed Defendants entered buildings unlawfully to commit crimes.

Although West's case is less clear-cut, the evidence of West's attempted entry through a kitchen window, his implausible excuse (to use the phone), and the kitchenware found outside all are sufficient to prove West intended to steal once he was inside Bowman's house. In each of the three cases, the jury had sufficient evidence, regardless of the inference instruction, to find intent to commit a crime. The lower standard in *Ulster* therefore applies. *Ulster*, 442 U.S. at 167 ("prosecution may rely on all of the evidence in the record to meet the reasonable-doubt standard").

Additionally, the court assumes juries follow all the instructions given, not solely the instruction on an inference. *State v. Lord*, 117 Wn.2d 829, 861, 822 P.2d 177 (1991) ("jury is presumed to have heeded the instructions of the court"), *cert. denied*, 113 S. Ct. 164 (1992). In the three cases, the trial courts instructed their juries to consider all evidence and instructions. The court in *Zachariasen*, for example, told the jury to "consider the instructions as a whole" and "not place undue emphasis on any particular instruction." Clerk's Papers at 6. Furthermore, the court instructed: "In determining whether any proposition has been proved, you should consider all of the evidence introduced by all parties bear-

ing on the question." Clerk's Papers at 6. The trial courts gave similar instructions at the trials of Brunson and West.

To follow *Schwendeman*, this court must assume the juries disregarded the courts' instructions. No evidence suggests the juries failed to follow their instructions, and no Washington cases support such a conclusion as a matter of law. The inference instructions given in these cases did not blind the juries to the other evidence presented.

We must point out that the *Delmarter* court's reformulation of "sole and sufficient" into "sole or alternate" is incorrect as a matter of law. The Supreme Court in *Ulster* expressed concern over inferences which served as the "sole and sufficient" proof of an element. *Ulster*, 442 U.S. at 167. All three words are significant. "Sole" proof of an element distinguishes cases in which the prosecution provides other evidence in support. "Sufficient" proof distinguishes inferences which are not, on their own, complete proof of an element. "And" implies a conjunctive standard — the inference must be both the sole and sufficient proof of an element. The Court in *Ulster* stated these requirements before suggesting a higher standard of proof applies.

The court of appeals in *Delmarter* made a subtle analytical switch when it substituted "or alternate" for "and sufficient." The conjunctive requirement of "sole and sufficient" proof became a disjunctive requirement of "sole or alternate" proof. Because an inference which proves an element, like that in WPIC 60.05, is *always* an alternate basis for finding an element, under *Delmarter*'s analysis, every permissive inference which proves an element must be shown true beyond a reasonable doubt.

We follow *Ulster*, not *Delmarter*, and declare that only inferences which are the "sole and sufficient" proof of an element implicate a higher standard of proof. Because the inference instructions in these cases were not the sole and

sufficient proof of intent, the appropriate standard of proof is more likely than not.

## Issue 3

■ We turn finally to whether the inference in WPIC 60.05 satisfies the standard of proof. We conclude intent to commit a crime more likely than not flows from unlawful entry.

> If the "unless" clause is omitted, no reasonable juror could interpret the instruction as anything more than a permissive inference and it would then be permissible whenever, under the facts of the particular case, there is a rational connection between the inferred fact, intent to commit a crime, and its supporting facts, unlawful entry. *See Ulster Cy.*, at 157. We can perceive of few, if any, cases in which intent to commit a crime would not have a rational connection to unlawful entry into a building. *See State v. Bishop*, [90 Wn.2d 185, 189, 580 P.2d 259 (1978)] ("[t]he noncriminal reasons for unlawfully entering a dwelling are few").

*State v. Johnson*, 100 Wn.2d 607, 619-20, 674 P.2d 145 (1983), *overruled on other grounds by State v. Bergeron*, 105 Wn.2d 1, 19, 711 P.2d 1000 (1985) ("Nothing herein is intended to indicate other than that we fully approve the pattern inference of intent jury instruction in burglary cases.")

Under the facts of these cases, criminal intent flows more likely than not from Defendants' unlawful entries. Defendants suggest hypothetical examples of unlawful entry made without intent to commit a crime inside, such as a homeless person seeking shelter or neighbors cutting through private areas. However, the court judges the sufficiency of the inference in light of the facts of each case. "This Court has never required that a presumption be accurate in every imaginable case." *Ulster*, 442 U.S. at 156 n.14. Sufficient evidence exists that Defendants entered buildings unlawfully to commit crimes inside.

Defendants raise two additional issues related to the

jury instructions. First, Zachariasen contends the trial court's erroneous inclusion of the inference instruction deprived him of effective assistance of counsel. Second, all Defendants argue the courts' use of both the circumstantial evidence and inference of intent instructions was error. *See Bergeron*, 105 Wn.2d at 19 (either inference instruction "or the pattern circumstantial evidence instruction (WPIC 5.01) may appropriately be given").

If error occurred, it was harmless in both instances. The trial judge in *Zachariasen* admitted giving the inference instruction was an administrative mistake, but the instruction was proper. As the trial court ruled, the instruction was redundant at worst. The same conclusion applies to giving both the general and specific instructions on inferences. The instructions in combination were not so redundant or confusing as to cause prejudicial error. The court in *Bergeron* suggested, but did not require, trial courts to use one or the other instruction. *Bergeron*, 105 Wn.2d at 19.

Because the inference instruction was appropriate in each of the three consolidated cases, this court upholds the respective juries' verdicts.

## CONCLUSION

The pattern jury instruction on the inference of intent in burglary cases, WPIC 60.05, describes a permissive inference. Because it was not the sole and sufficient proof of intent in these consolidated cases, the inference is constitutional if intent to commit a crime more likely than not flows from unlawful entry.

We affirm the court of appeals.

DURHAM, C.J., and DOLLIVER, SMITH, MADSEN, ALEXANDER, and TALMADGE, JJ., concur.

JOHNSON, J. (dissenting) — The use of a statutory inference in these cases permitted each jury to find proof beyond a reasonable doubt of the two elements of second

degree burglary, based on only one proven fact. The majority finds this permissive inference,[3] and the corresponding jury instruction, constitutional because the inferred fact/element is supported by other evidence in the record. By merely concluding the Defendants were guilty and concluding any claimed error was harmless, the majority fails to conduct the required constitutional analysis. Viewed under the proper constitutional analysis, the majority's conclusion as to the required connection between the proven fact and the element of the crime is erroneous and, therefore, I dissent.

The starting point for the proper analysis is recognition of the Legislature's authority to define the elements of any crime. However, once defined, the State is required under the due process clause of the Fourteenth Amendment to prove each element beyond a reasonable doubt. *See County Court of Ulster County v. Allen*, 442 U.S. 140, 156, 99 S. Ct. 2213, 60 L. Ed. 2d 777 (1979); *State v. Hanna*, 123 Wn.2d 704, 710, 871 P.2d 135, *cert. denied,* 115 S. Ct. 299 (1994). In reviewing a conviction, we must be satisfied the State has met its constitutional requirements. Inferences and presumptions may be used to assist the prosecution in proving the elements of the crime charged but they cannot lessen or shift the prosecution's burden of proof on any element. *Hanna*, 123 Wn.2d at 710. Due process requires that when an inference is used as proof of an element of a crime, the connection between the foundational fact and the elemental fact must be rational. *Ulster*, 442 U.S. at 171 (Powell, J., dissenting). When an inference is the sole and sufficient proof of an element of a crime, the rational connection between the foundational fact and the elemental fact must be sufficient to support the inference beyond a reasonable doubt. *Ulster*, 442 U.S. at 166-

---

[3]For the purposes of this dissent, we will accept the majority's label of the inference at issue as a permissive inference as correct. A permissive inference permits but does not require the jury to infer an element of an offense. *State v. Hanna*, 123 Wn.2d 704, 710, 871 P.2d 135, *cert. denied,* 115 S. Ct. 299 (1994). A mandatory inference requires a jury to find the elemental fact upon proof of the foundational fact. *Hanna*, 123 Wn.2d at 710. The term inference(s) as used in this dissent will only relate to permissive inferences, unless otherwise noted.

67. In cases where the inference is only some proof of an element of a crime, the rational connection must only support the inference as being more likely than not. *Ulster*, 442 U.S. at 165, 167. If these two extremes were the only way in which inferences were used, no problem would exist.

Difficulties do arise, however, in cases like these, where the inference may be used as either (1) an alternate basis for proving the element (i.e., the sole and sufficient evidence of the element), or (2) only part of the proof supporting an element. The inference at issue here allows the jury to infer "intent to commit a crime" from the fact of entering or remaining unlawfully in a building. RCW 9A.52.040; WPIC 60.05. The jury instruction given on this inference goes on to state: "This inference is not binding upon you and it is for you to determine what weight, if any, such inference is to be given." WPIC 60.05. The problem arising from the use of this inference instruction in these cases, and in all like cases, is the reviewing court can never determine how the jury used the inference—as the sole and sufficient proof of the elemental fact or as only part of the proof of the elemental fact. Because a reviewing court can never know how the jury treated the inference, the only way to ensure that due process is complied with is to always require the rational connection in inferences which *may* be used as the sole and sufficient proof of an element to be such that a jury could infer the elemental fact from the foundational fact beyond a reasonable doubt. This is the conclusion which the court of appeals reached in *State v. Delmarter*, 68 Wn. App. 770, 784, 845 P.2d 1340 (1993), and with which I agree.

The majority is satisfied the prosecution meets its burden in these cases because it assumes juries follow the instructions they are given, and because there is other evidence in the records at issue supporting a finding of "intent." Majority at 109-10. First of all, this is not the proper assumption to make in these cases. It is equally valid to assume the juries in these cases rejected all other

evidence of the Defendants' intent and relied solely on the inference. This is the only proper assumption to make in reviewing the constitutionality of an inference. *Ulster*, 442 U.S. at 175 (Powell, J., dissenting).

Disregarding this improper assumption, the majority has also erred by essentially applying a sufficiency of the evidence or harmless error standard to the records before it. Because the majority finds there was sufficient evidence and thus no error in convicting these three Defendants, it does not matter whether the juries actually used the inference as the sole and sufficient evidence or only some evidence of the Defendants' intent. This begs the question.

The problem this inference instruction creates can be rectified. First, this court could adopt the analysis laid out in *Delmarter*: where an inference may be used as the sole or alternate proof of an element, its rational connection "must be such that a rational trier of fact could find the elemental fact from the foundational one beyond a reasonable doubt." *Delmarter*, 68 Wn. App. at 784. In the alternative, trial courts could clearly instruct the jury that the inference can not alone support a finding of the elemental fact. *See Ulster*, 442 U.S. at 175 (Powell, J., dissenting). Thus, the inference would neither be a sole basis nor an alternate basis for proving a required element and its rational connection need only flow more likely than not from the foundational fact. A third option would be simply to avoid giving the instruction at all. If indeed there is other evidence available in the record to prove the elemental fact, the inference instruction should not be given, and serves only to create grounds for appeals such as this.

It is this court's duty to insure the prosecution always meets its burden of persuasion by proving every required element of a crime beyond a reasonable doubt. In cases involving permissive inferences of elements of a crime, the rational connection required should be shown beyond a reasonable doubt. The majority is content to correct any potential problems on a case-by-case basis by applying a

sufficiency of the evidence or harmless error standard under the guise of a "permissive inference." A more sound analytical approach is to prevent potential due process violations before they happen. This can be accomplished by always requiring the higher standard of proof, clearly instructing the jury on the proper role of an inference, or eliminating the inference instructions altogether.

In these three cases, this court has no way of knowing what the juries did or did not do, and, therefore, the error cannot be harmless. I would reverse all three convictions and remand for new trials.