[No. 22322-1-III.   Division Three.   September 21, 2004.]

THE STATE OF WASHINGTON, *Respondent*, v. ANTONIO B. CANTU, *Appellant*.

*Randy W. Smith*, for appellant.

*John D. Knodell, Prosecuting Attorney*, and *Carole L. Highland, Deputy*, for respondent.

SWEENEY, A.C.J. — Unlawful entry into a residence carries with it a permissible inference of intent to commit a crime therein. Antonio Cantu challenges the sufficiency of the evidence to support this inference on these facts. The State proved that Mr. Cantu broke into his mother's locked bedroom while in her home. But it could not prove that he stole money, beer, and drugs from the room. The court nonetheless found that Mr. Cantu had failed to overcome the permissible inference that his purpose in entering unlawfully was to commit a crime. The record here supports that finding. And so we affirm the conviction.

## FACTS

The State charged Antonio Cantu with residential burglary. It alleged that he entered his mother's home and kicked in the locked door of her bedroom, all with the intent to steal, and then stole money, beer, and prescription drugs. In addition to the residential burglary, the State also charged theft, being a minor in possession of alcohol, and unlawful possession of a legend drug.

At the juvenile adjudication proceeding, the State presented testimony that Mr. Cantu arrived at his mother Noelia Moncada's home in the late morning of February 6, 2003. His younger sister, Sophia, was home alone and let him in. Mr. Cantu lived at the home intermittently and still had a room there. He was not living there on this day, however. Ms. Moncada's nephew, Jeffery, was also living there.

The lock on Ms. Moncada's bedroom door was of the kind usually found on exterior doors. Mr. Cantu kicked in the bedroom door, breaking the lock.

Sophia saw him enter the room and remove an alarm clock that belonged to him. He then left the house. Sophia called her mother who called the police. Both Sophia and Ms. Moncada told the police that, in addition to the clock, some pocket change, beer, and prescription drugs were missing from the room. The only item Sophia saw Mr. Cantu take was the clock. Later that evening, Ms. Moncada's nephew, Jeffery, handed her the money, beer, and drugs and apologized for taking them.

During Mr. Cantu's adjudication hearing, the prosecutor moved to amend the information to allege that the intended crime underlying the burglary was not theft, but malicious mischief by kicking down the bedroom door. The State argued, during closing argument, that the "dwelling" unlawfully entered was not the house, but the locked bedroom. This being so, the State realized that malicious mischief could not serve as the intended crime—it was the means of entering, not the purpose. The State therefore reverted to theft and unlawful possession, as originally charged, as the intended crime.

The defense argued that the State had proved no more than that Mr. Cantu committed criminal trespass when he entered his mother's room without permission to retrieve his own property. Counsel moved to dismiss the theft and possession charges for lack of evidence. Without these charges, counsel argued, the burglary charge also should be dismissed. The motion was denied. The court found that the State had failed to prove the theft charges. The court nevertheless found Mr. Cantu guilty of residential burglary. It concluded that Mr. Cantu had failed to rebut the statutory presumption that he broke into his mother's bedroom with the intent to commit some crime.

## DISCUSSION

Mr. Cantu points out that there is no evidence that Ms. Moncada expressly forbade Mr. Cantu to enter her room. From this, he contends that his entry into the room was lawful. The State responds that the fact that Ms. Moncada kept her room securely locked is sufficient to support a finding that she placed clear limits on any license Mr. Cantu might have had to enter the room.

■■ Mr. Cantu challenges the sufficiency of the evidence. We therefore view the evidence in the light most favorable to the State. And we will affirm a conviction if a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Bergeron*, 105 Wn.2d 1, 11, 711 P.2d 1000 (1985); *State v. Green*, 94 Wn.2d 216, 220-21, 616 P.2d 628 (1980). A challenge to the sufficiency of the evidence to support a criminal conviction admits the truth of the State's evidence. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). But evidence is not sufficient if the fact finder must guess or resort to speculation or conjecture. *State v. Hutton*, 7 Wn. App. 726, 728, 502 P.2d 1037 (1972).

A person is guilty of residential burglary if he enters or remains unlawfully in a dwelling with the intent to commit a crime against a person or property therein. RCW 9A.52.025(1). A juvenile is presumed to have license to enter his parent's home. Absent contrary evidence, therefore, the 17-year-old Mr. Cantu is presumed to have had the privilege to enter Ms. Moncada's residence.

■ A locked room can be a "dwelling" for the purpose of residential burglary. *State v. Crist*, 80 Wn. App. 511, 514-15, 909 P.2d 1341 (1996). Here, however, Mr. Cantu disputes that he unlawfully entered his mother's room. He contends that any restrictions on his presumed license to move about freely in the home must be expressed verbally. In *Crist*, for example, a father expressly told his son not to enter his locked room, making the entry unlawful.

■ But Mr. Cantu offers no authority for the proposition that only verbal restrictions have legal effect. Here, nononsense locks on the bedroom door gave unmistakable notice that entry was not permitted. Mr. Cantu nonetheless contends that the State cannot prove that a crime inside the room was intended without proving that a crime was committed. Because there was no evidence that Mr. Cantu committed a crime after he entered the bedroom, the State did not prove burglary.

■■ Every fact necessary to establish the elements of the statutory crime of burglary must be proved beyond a reasonable doubt. This includes the intent to commit a crime against a person or property in the burglarized premises. *Bergeron*, 105 Wn.2d at 16. This means any crime—the State need not prove intent to commit a specific crime. *Id*.

■ And once the State shows that a person entered the premises unlawfully, a permissible inference arises that the entry was made with the intent to commit a crime. RCW 9A.52.040; *State v. Brunson*, 76 Wn. App. 24, 877 P.2d 1289 (1994), *aff'd*, 128 Wn.2d 98, 905 P.2d 346 (1995). The fact finder may find from common knowledge and experience that there are few honest reasons for unlawfully entering a dwelling. *State v. Bishop*, 90 Wn.2d 185, 189, 580 P.2d 259 (1978); *Brunson*, 76 Wn. App. at 27. Once unlawful entry is proved, however, the intent to commit a crime is subject to a "more likely than not" standard of proof rather than a "reasonable doubt" standard. *Brunson*, 76 Wn. App. at 27.

■ The burden of proof shifts to the defense to rebut the inference of criminal intent. *Bergeron*, 105 Wn.2d at 7, 18. That evidence must be sufficient to raise a reasonable doubt. *State v. Carter*, 5 Wn. App. 802, 805, 490 P.2d 1346 (1971). Once the defendant rebuts the inference by producing plausible evidence that he entered the premises for some lawful purpose—such as to reclaim his own property, for example—the State once again has the burden of persuasion beyond a reasonable doubt that a crime was intended. *Bergeron*, 105 Wn.2d at 18. To do this, the State

must produce evidence that a specific crime was intended. *Id.* at 18-19. In *State v. Kane*, the State proved that the defendant entered a store without permission, but removed only his own property. *State v. Kane*, 72 Wn.2d 235, 239, 432 P.2d 660 (1967). This was not sufficient to support a burglary conviction because only by indulging in speculation and conjecture could the fact finder conclude that he intended to commit a crime when he entered. *Id.*

■ Here, Sophia testified that she saw Mr. Cantu enter the room and remove his own clock. And his mother corroborated that this clock had been in the room. But Mr. Cantu did not claim to have entered the room solely to retrieve his own property. He denied removing anything from the room. He did not, then, offer a plausible reason for breaking into the room. He denied that he entered at all.

Even if the court entertained a reasonable doubt that Mr. Cantu in fact stole anything, the defense offered no evidence to rebut the *statutory inference of intent*. The court was, therefore, within the evidence to find that more likely than not Mr. Cantu kicked in the bedroom door with the intent to commit a crime.

We affirm the conviction.

SCHULTHEIS and KURTZ, JJ., concur.

Review granted at 154 Wn.2d 1002 (2005).