FILED
COURT OF APPEALS
DIVISION II

2015 MAR 31 AM 8: 36

STATE OF WASHINGTON
BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 45668-1-II |
| Respondent, | |
| v. | |
| GARY R. COLE, | UNPUBLISHED OPINION |
| Appellant. | |

MAXA, J. — Gary Cole appeals his conviction of second degree burglary for taking a wood stove and other items from vacant buildings. He argues that (1) the evidence was insufficient to support his conviction because the only evidence that he unlawfully entered the buildings was his own statement, (2) the trial court erred in denying his motion for a mistrial after the arresting officer testified that Cole had misdemeanor warrants, and (3) the prosecutor engaged in misconduct by stating that the jury could convict Cole even if the owner of the buildings had given him permission to enter. Cole also asserted additional arguments in a statement of additional grounds (SAG).

We hold that (1) the State produced sufficient circumstantial evidence that Cole unlawfully entered the buildings apart from his statement, (2) the trial court did not abuse its discretion in denying Cole's motion for a mistrial even though the officer's reference to Cole's warrants was inappropriate, and (3) the prosecutor did not commit misconduct. We also find no merit in Cole's SAG assertions. Accordingly, we affirm Cole's conviction.

## FACTS

In December 2012, Jeffrey Berg inspected property in Moclips that he was interested in buying. The property consisted of an old tavern, a residence, and a well house. In January 2013, he entered into a purchase and sale agreement with the owner who lived in Minnesota. A few days before the transaction was scheduled to close and after he had deposited his purchase price in escrow, Berg drove to the property. He noticed that the door to the well house appeared damaged. He then got a key from the caretaker and went into the tavern. He noticed that someone had removed wiring and stainless steel panels from behind the stoves, damaged the stoves, and taken the fire suppression equipment. Berg called the sheriff.

Deputy Robert Wilson responded and the two inspected the residence and well house. They noted that someone had broken a large window out of the residence and removed a wood stove. And someone had taken the well pump, pressure tank, electrical box, and wiring from the well house. They found another wood stove and other parts along a trail leading away from the property. After some investigation, Deputy Wilson learned that Teresa Bushman had purchased the wood stove from Cole, and Deputy Wilson located it at the residence of Teresa's husband Steve Bushman in Hoquiam.

Deputy Wilson then contacted Cole. After first denying any involvement in the burglary, Cole admitted that he had taken the wood stove. However, he said that Steve and Teresa Bushman owned it and had paid him $100 to bring it to them. He also said that he awoke one morning to find the well pump on his property and that he took it to his friend Donald Waugh's home.

The State charged Cole with second degree burglary. At trial, Teresa Bushman testified that she had purchased the wood stove from Cole for $150. She stated that Cole had the wood stove in the place where he lived and that she did not know that it was stolen. After she purchased it, her husband picked it up and took it to Hoquiam. Steve Bushman testified that his wife told him that she had purchased the wood stove and that it was not stolen.

Deputy Wilson testified regarding his investigation, his observations at the building, and his communications with Cole. The State also introduced a written statement Cole made out for Deputy Wilson. It stated:

> About three weeks ago, Steve and Teresa told me to go to the house next to the Moclips Tavern and take the wood stove. They said they would give me $100.00 to get it for them. They told me the lady that lived there before but had moved out about two weeks prior left their stove at the house. They told me this lady had borrowed the stove and didn't give it back. The house was vacant as the new owners were not living there. I went down there just before dark. I entered the house through the back sliding glass door. I found it to be unlocked. I went inside and dismantled the wood stove. I put it on a dolly and wheeled it across the highway and down a trail towards the 208 Mill. I took it down the trail about halfway and put [it] in the brush on the trail. Then I walked down to the 208 Mill to Teresa Bushman's trailer and told her where I left it. She gave me $50 in cash and $50 worth of methamphetamines. The reason I know where the well pump was at is that I found the pump on the ground next to my truck when I woke up about three weeks ago. I didn't want it at my place so I took it to Donald Waugh, Jr[.]'s house on the reservation.

Exhibit 1.

During trial, the State asked Deputy Wilson about contacting Cole. He responded, "Well, at that time I was aware that he had misdemeanor warrants." Report of Proceedings (RP) at 68. Cole immediately objected and asked for a mistrial. The trial court denied the motion. The trial court told the jury that it had sustained the objection and that the jury should disregard Deputy Wilson's response.

3

During rebuttal closing argument, the prosecutor told the jury:

I have the burden of proof so I get the last word. Is it reasonable to make an inference that this entry was lawful? The defense would suggest that there is. Oh, sure, maybe some guy back in Minnesota said it was okay to go in and trash the place. *Even if that were true, whether that's lawful is still a question for you once a guy has already put money in escrow.*

RP at 127-28 (emphasis added). Cole did not object to this statement.

The jury returned a guilty verdict. Cole appeals.

## ANALYSIS

### A.    SUFFICIENCY OF THE EVIDENCE

Cole argues that the State failed to produce sufficient evidence that he unlawfully entered or remained in a building, one of the elements of second degree burglary under RCW 9A.52.030(1). He argues that the State could not rely on his statement to establish the unlawfulness of his entry because of the corpus delicti rule, and that there was no other evidence that he did not have permission to enter. We disagree.

#### 1.    Elements of Burglary

The elements of second degree burglary are (1) entering or remaining unlawfully in a building other than a vehicle or dwelling, and (2) so doing with intent to commit a crime against a person or property therein. RCW 9A.52.030(1); *see State v. Brunson*, 128 Wn.2d 98, 104-05, 905 P.2d 346 (1995). RCW 9A.52.010(5) defines the phrase "[e]nters or remains unlawfully" as "[a] person 'enters or remains unlawfully' in or upon premises when he or she is not then licensed, invited, or otherwise privileged to so enter or remain."

4

2. Corpus Delicti

The corpus delicti principle requires that the State prove that some crime actually occurred. *State v. Brockob*, 159 Wn.2d 311, 327, 150 P.3d 59 (2006). Under the corpus delicti rule, the defendant's incriminating statement alone is not sufficient to establish that a crime took place. *Id.* at 328. "[T]he State must present evidence independent of the incriminating statement that the crime a defendant described in the statement actually occurred." *Id.* (emphasis omitted).

Corpus delicti usually consists of an injury or loss caused by someone's criminal act. *City of Bremerton v. Corbett*, 106 Wn.2d 569, 573-74, 723 P.2d 1135 (1986). The corpus delicti of second degree burglary is an unlawful entering of a building and with the intent to commit a crime therein. Proof of the identity of the person who committed the crime is not part of the corpus delicti, which only requires corroborating evidence that *someone* committed a crime. *Id.* at 574.

In applying the corpus delicti rule, we focus on the sufficiency of the independent evidence other than the defendant's incriminating statement. *State v. Dow*, 168 Wn.2d 243, 249, 254, 227 P.3d 1278 (2010). Our review is de novo. *State v. Green*, 182 Wn. App. 133, 143, 328 P.3d 988, *review denied*, 337 P.3d 325 (2014). In determining the sufficiency of independent evidence under the corpus delicti rule, we assume the truth of the State's evidence and view all reasonable inferences therefrom in the light most favorable to the State. *State v. Aten*, 130 Wn.2d 640, 658, 927 P.2d 210 (1996). The independent evidence need not be sufficient to establish the existence of a crime beyond a reasonable doubt or even by a preponderance of the evidence. *Id.* at 656. The evidence only must provide "[p]rima facie corroboration" that a crime occurred. *Brockob*, 159 Wn.2d at 328.

Here, ample corroborating evidence existed that someone unlawfully entered the buildings and removed items. The residence showed signs of forced entry in that a window was broken out enough for a person to enter, and someone removed a wood stove from the residence. In addition, someone stripped wiring and stainless steel from the tavern, and dismantled the well house. And Berg testified that he found other stove parts and pieces from the house and tavern on the trail leading away from the property.

We hold that the corroborating evidence independent of Cole's written statement was sufficient to show that the crime of second degree burglary occurred. Accordingly, under the corpus delicti rule we can consider Cole's written statement in assessing the sufficiency of the evidence.

3. Sufficiency of the Evidence

Cole argues that because the State did not present testimony from the property owner or the caretaker and because Berg did not yet own the property, there was insufficient evidence that Cole did not have permission to enter the buildings. We disagree.

The test for determining sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt. *State v. Rose*, 175 Wn.2d 10, 14, 282 P.3d 1087 (2012). In a sufficiency of the evidence claim, the defendant admits the truth of the State's evidence and all reasonable inferences drawn from that evidence. *Id.* Credibility determinations are made by the trier of fact and not subject to review. *State v. Miller*, 179 Wn. App. 91, 105, 316 P.3d 1143 (2014). Circumstantial and direct evidence are equally reliable. *Id.*

Cole admitted that he entered the residence and removed the wood stove. However, he argues that there is no evidence that the owner in Minnesota did not grant him permission to enter the buildings. We hold that there was sufficient evidence for a jury to infer that Cole had no permission.

First, Cole's explanation that the Bushmans solicited him to retrieve the wood stove, even though contradicted by the Bushmans' testimony, allows an inference that he did not have permission from the owner to enter. Second, Cole stated that he knew the house was vacant and that he went to remove the wood stove just before dark, suggesting surreptitious behavior. Third, the residence showed evidence of forced entry – a window was broken out enough for a person to enter. Taking this evidence in the light most favorable to the State, we hold that a reasonable jury could find beyond a reasonable doubt that Cole did not have permission to enter the residence.

We hold that there was sufficient evidence to support a finding that he entered the residence unlawfully with an intent to commit a crime therein. Therefore, we reject Cole's sufficiency of the evidence argument.

B.    MOTION FOR MISTRIAL

Cole claims that the trial court abused its discretion when it denied his motion for a mistrial following Deputy Wilson's testimony that Cole had outstanding misdemeanor arrest warrants. He argues that the trial court did not properly assess the prejudicial impact this evidence had on the jury. We disagree.

We review a trial court's denial of a mistrial for abuse of discretion. *State v. Emery*, 174 Wn.2d 741, 765, 278 P.3d 653 (2012). Our Supreme Court has stated that abuse of discretion

will be found for denial of a mistrial only when no reasonable judge would have reached the same conclusion. *Id.* at 765. Further, we will overturn a trial court's denial of a mistrial motion only when there is a substantial likelihood that the error affected the jury's verdict. *State v. Rodriguez*, 146 Wn.2d 260, 269-70, 45 P.3d 541 (2002). A mistrial should be ordered "only when the defendant has been so prejudiced that nothing short of a new trial can ensure that the defendant will be fairly tried." *Emery*, 174 Wn.2d at 765.

We examine three factors – the *Hopson* factors – when determining whether an irregularity warrants a mistrial: " '(1) its seriousness; (2) whether it involved cumulative evidence; and (3) whether the trial court properly instructed the jury to disregard it.' " *Emery*, 174 Wn.2d at 765 (quoting *State v. Hopson*, 113 Wn.2d 273, 284, 778 P.2d 1014 (1989)). We consider these factors with deference to the trial court because the trial court is in a better position to evaluate the effect of an irregularity on the trial proceedings. *See State v. Perez-Valdez*, 172 Wn.2d 808, 818-19, 265 P.3d 853 (2011).

Regarding the first factor, Cole argues that Deputy Wilson's comment was a serious irregularity because it introduced highly prejudicial evidence that likely swayed the jury in assessing his credibility and it was inadmissible evidence under ER 404(b). The improper admission of a defendant's prior misconduct can be a serious irregularity. *See State v. Babcock*, 145 Wn. App. 157, 163-64, 185 P.3d 1213 (2008). But here, the evidence of Cole's guilt was overwhelming, thus minimizing the seriousness of the statement. Cole admitted to the Deputy that he had entered the residence and taken the wood stove. As a result, there is no substantial likelihood that Deputy Wilson's statement affected the jury's verdict or that Cole was prejudiced.

With regard to the second factor, Deputy Wilson's comment was not cumulative. There was no other evidence admitted at trial about Cole's criminal history.

Third, the trial court instructed the jury that it was sustaining Cole's objection and that it should disregard the testimony. Cole's prompt objection to Deputy Wilson's statement and the trial court's verbal instruction to the jury cured any irregularity. And we presume that the jury followed the trial court's instruction and considered only the evidence that was properly before it. *Perez-Valdez*, 172 Wn.2d at 818-19.

Our analysis of the *Hopson* factors indicates that the trial court did not abuse its discretion in concluding that Deputy Wilson's comment did not warrant a mistrial. Therefore, we hold that the trial court did not err when it denied Cole's mistrial motion.

C.     PROSECUTORIAL MISCONDUCT

Cole claims that the prosecutor's closing rebuttal argument improperly told the jury that it could disregard the elements of the offense and still return a guilty verdict. We disagree.

To prevail on a claim of prosecutorial misconduct, a defendant must show that the prosecutor's conduct was both improper and prejudicial. *In re Pers. Restraint of Glasmann*, 175 Wn.2d 696, 704, 286 P.3d 673 (2012). We review the prosecutor's conduct and whether prejudice resulted therefrom "by examining that conduct in the full trial context, including the evidence presented, 'the context of the total argument, the issues in the case, the evidence addressed in the argument, and the instructions given to the jury.' " *State v. Monday*, 171 Wn.2d 667, 675, 257 P.3d 551 (2011) (internal quotation marks omitted) (quoting *State v. McKenzie*, 157 Wn.2d 44, 52, 134 P.3d 221 (2006)).

9

Here, the prosecutor's argument was not improper. The prosecutor's argument was made in response to Cole's claim that the only way the State could prove an unlawful entry was to have the owner testify that he had not given Cole permission to enter. On rebuttal, a prosecutor "is entitled to make a fair response to the arguments of defense counsel." *State v. Russell*, 125 Wn.2d 24, 87, 882 P.2d 747 (1994). Although the language used may have been unartful, the prosecutor simply was arguing that the jury could infer a lack of permission from the evidence presented even if the owner did not testify. This was not improper argument and was not prosecutorial misconduct. Cole's claim fails.

D.    SAG ARGUMENTS

In his SAG Cole asserts that Deputy Wilson did not read him his *Miranda*[1] rights, his offender score is incorrect, his attorney did not call any of his witnesses, the sheriff planted pills on him so the State could coerce him into a guilty plea, and every one of his constitutional rights was violated. We find no merit to these claims.

First, the record shows that Deputy Wilson advised Cole of his *Miranda* rights. Second, Cole fails to show what error exists in the offender score calculation. And the record shows that the State presented extensive evidence of Cole's criminal history. Third, we cannot address whether his attorney failed to call witnesses or whether the sheriff falsified evidence because these claims rely on matters outside the record and are not reviewable in a direct appeal. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995). And fourth, Cole fails to explain how his constitutional rights were violated or how the record demonstrates these violations.

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

45668-1-II

Therefore, we need not address them. RAP 10.10(c). Accordingly, we reject Cole's SAG claims.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, P.J.

We concur:

LEE, J.

MELNICK, J.