FILED
COURT OF APPEALS
DIVISION II

2014 JAN 22 AM 9: 16

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 43215-3-II |
| Respondent, | |
| v. | |
| THOMAS E. MILLER, | PUBLISHED OPINION |
| Appellant. | |

QUINN-BRINTNALL J.P.T.[1] — A jury found Thomas Miller guilty of second degree theft and making a false statement in application for or assignment of certificate of title to a tractor-trailer. Miller appeals, arguing that (1) the trial court violated his and the public's right to an open and public trial by meeting with counsel in chambers; (2) the trial court violated his right to be present by discussing a statute with counsel in chambers; (3) insufficient evidence supports that his statement was false, an element of his application for or assignment of certificate of title conviction; and (4) the trial court improperly commented on the evidence by instructing the jury on the statutory process for legally claiming title to found property. We affirm.

### FACTS

In July 2010, Aubrey Cole parked his 53-foot tractor-trailer outside the Great Wall Chinese Restaurant in Silver Creek, Washington. Cole told a restaurant employee that he was

---

[1] Judge Christine Quinn-Brintnall is serving as a judge pro tempore of the Court of Appeals, Division II, pursuant to CAR 21(c).

parking this tractor-trailer, wrote down his telephone number, and asked the employee to call him if there was any problem.

Miller was secretary and registered agent for the Great Wall restaurant. Miller believed that Cole's tractor-trailer was illegally parked at the restaurant and called the police to have it removed. Lewis County Sheriff's Deputy Matthew McKnight told Miller to contact a tow company if he wanted the tractor-trailer civilly impounded. McKnight also gave Cole's address to Miller.

On October 4, Miller mailed Cole an affidavit for lost title, the release of interest for the tractor-trailer, and a note asking Cole to contact him. Upon receiving the documents, Cole immediately tried to contact Miller, leaving Miller a voicemail message. Cole went to the Great Wall restaurant to move his tractor-trailer, but Miller had blocked access to the tractor-trailer with his van and had removed the tractor-trailer's license plate. A few days later, Cole met Miller at the Great Wall restaurant parking lot. Miller told Cole that he needed to pay $200 before Cole could remove the tractor-trailer. Cole said he would give Miller $100. Cole returned the next day with $100 but found that his tractor-trailer had been moved to a locked facility across the street from the restaurant. Cole reported his tractor-trailer stolen on October 13.

On October 26, Miller went to the Department of Licensing (DOL) and signed a "Three-Year Registration Without Title Affidavit." Ex. 4. The affidavit contained the following preprinted language: "I certify I am the rightful owner of this vehicle/vessel having obtained ownership from the last rightful owner. The circumstances under which I obtained ownership and the reasons satisfactory evidence of ownership is unavailable are: . . . ." Ex. 4. Under this

preprinted language, Miller handwrote the following: "Trailer was left on my property, attempted to get ahold [sic] of owner of record by certified mail with return receipt with no reply." Ex. 4. The DOL issued Miller a "Vehicle Title Application/Registration Certificate" that stated in the comment section, "[N]o title issued - ownership in doubt." Ex. 4 (capitalization omitted).

On October 30, Miller asked Chuck Norris if he wanted to purchase a "trailer that had been abandoned on his property." Report of Proceedings (RP) (Jan. 26, 2012) at 28. Norris eventually purchased the tractor-trailer from Miller for $1,000. After police notified Norris that there was a dispute regarding ownership of the tractor-trailer, he returned it to Cole. Norris asked Miller to return the money he had paid for the tractor-trailer but Miller refused.

The State charged Miller by second amended information with second degree theft and making a false statement in application for or assignment of a certificate of title. On the first day of trial, the trial court referred to a discussion that had taken place in chambers before trial, stating, "The statute we were talking about in chambers pretrial, with respect to what a person is obligated to do, with respect to abandoned or found property, the entire chapter is RCW 63.21.010 and that's for the benefit of both defense and prosecution." RP (Jan. 26, 2012) at 22. On the second day of trial, the trial court stated, "I want to see both of you in my chambers at 1:00 to go over instructions." RP (Jan. 27, 2012) at 60. The trial court instructions to the jury

No. 43215-3-II

included an instruction based on RCW 63.21.010, the statute providing the procedure for legally claiming found property.[2]

The jury returned verdicts finding Miller guilty on both counts. Miller timely appeals his convictions.

ANALYSIS

PUBLIC TRIAL RIGHT

Miller first argues that the trial court violated his and the public's right to an open and public trial by meeting with counsel in chambers without conducting a *Bone-Club*[3] analysis. We disagree.

Article I, section 22 of the Washington State Constitution and the Sixth Amendment to the United States Constitution give criminal defendants the right to a public trial by an impartial jury. *State v. Lormor*, 172 Wn.2d 85, 90-91, 257 P.3d 624 (2011). Additionally, article I, section 10 of the Washington State Constitution secures the public's right to open and accessible proceedings and provides that "'[j]ustice in all cases shall be administered openly'" and without

---

[2] RCW 63.21.010 provides,

(1) Any person who finds property that is not unlawful to possess, the owner of which is unknown, and who wishes to claim the found property, shall:

(a) Within seven days of the finding acquire a signed statement setting forth an appraisal of the current market value of the property prepared by a qualified person engaged in buying or selling like items or by a district court judge, unless the found property is cash; and

(b) Within seven days report the find of property and surrender, if requested, the property and a copy of the evidence of the value of the property to the chief law enforcement officer, or his or her designated representative, of the governmental entity where the property was found, and serve written notice upon the officer of the finder's intent to claim the property if the owner does not make out his or her right to it under this chapter.

[3] *State v. Bone-Club*, 128 Wn.2d 254, 906 P.2d 325 (1995).

4

No. 43215-3-II

unnecessary delay. *Lormor*, 172 Wn.2d at 91 (alteration in original) (quoting *Seattle Times Co. v. Ishikawa*, 97 Wn.2d 30, 36, 640 P.2d 716 (1982)). Whether a trial court's in-chambers proceeding violates public trial rights is a question of law that we review de novo. *Lormor*, 172 Wn.2d at 90.[4]

"The public trial right serves to ensure a fair trial, to remind the officers of the court of the importance of their functions, to encourage witnesses to come forward, and to discourage perjury." *State v. Brightman*, 155 Wn.2d 506, 514, 122 P.3d 150 (2005) (citing *Peterson v. Williams*, 85 F.3d 39, 43 (2d Cir.), *cert. denied*, 519 U.S. 878 (1996)). Generally a trial court must conduct the five-part test set forth in *State v. Bone-Club*, 128 Wn.2d 254, 906 P.2d 325 (1995), to determine if a closed proceeding is warranted.[5]

---

[4] The State does not challenge Miller's standing to raise a public trial violation under article I, section 10 of the Washington State Constitution, an issue left unresolved by our Supreme Court. *State v. Wise*, 176 Wn.2d 1, 16 n.9, 288 P.3d 1113 (2012). Because we hold that Miller has failed to show that the right to a public trial attached to the challenged proceedings here, we need not address his standing to assert the public's right to an open trial under article I, section 10.

[5] The five criteria set forth in *Bone-Club* are

    1. [t]he proponent of closure or sealing must make some showing [of a compelling interest], and where that need is based on a right other than an accused's right to a fair trial, the proponent must show a "serious and imminent threat" to that right.

    2. Anyone present when the closure motion is made must be given an opportunity to object to the closure.

    3. The proposed method for curtailing open access must be the least restrictive means available for protecting the threatened interests.

    4. The court must weigh the competing interests of the proponent of closure and the public.

    5. The order must be no broader in its application or duration than necessary to serve its purpose.

128 Wn.2d at 258-59 (alteration in original) (quoting *Allied Daily Newspapers of Wash. v. Eikenberry*, 121 Wn.2d 205, 210-11, 848 P.2d 1258 (1993)).

However, "not every interaction between the court, counsel, and defendants will implicate the right to a public trial, or constitute a closure if closed to the public." *State v. Sublett*, 176 Wn.2d 58, 71, 292 P.3d 715 (2012). Thus, our first step in determining whether a public trial violation had occurred is to consider "whether the proceeding at issue implicate[d] the public trial right, [and] thereby constitute[d] a closure." *Sublett*, 176 Wn.2d at 71. We undertake this consideration by using the "experience and logic" test. *Sublett*, 176 Wn.2d at 72-73.[6] Under this test, "the experience prong . . . asks 'whether the place and process have historically been open to the press and general public,'" and "[t]he logic prong asks 'whether public access plays a significant positive role in the functioning of the particular process in question.'" *Sublett*, 176 Wn.2d at 73 (quoting *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 8, 106 S. Ct. 2735, 92 L. Ed. 2d 1 (1986)). If the answer to both prongs is yes, the public trial right attaches, and the trial court must conduct an on-the-record *Bone-Club* analysis before closing the proceedings. *Sublett*, 176 Wn.2d at 73. Miller has the burden of showing that the public trial right attached to the challenged proceeding under the experience and logic test. *State v. Halverson*, ___ Wn. App. ___, 309 P.3d 795, 797 (2013) (citing *Sublett*, 176 Wn.2d at 73).

A.    PRETRIAL CONFERENCE

Miller first asserts that the trial court violated his and the public's right to an open and public trial by discussing a statute in chambers before trial. We disagree.

---

[6] Although four justices signed the lead opinion in *Sublett*, a majority adopted the "experience and logic" test with Justice Stephens's concurrence. 176 Wn.2d at 136 (Stephens, J., concurring). More recently, our Supreme Court cited *Sublett* in unanimously applying the "experience and logic" test in *In re Personal Restraint of Yates*, 177 Wn.2d 1, 28-29, 296 P.3d 872 (2013).

As a threshold matter, Miller asserts that the State "should bear the burden of establishing that a closed proceeding does not implicate the core values of the open trial right" and, thus, should bear the burden of establishing on the record what transpired during a closed in camera proceeding. Reply Br. of Appellant at 5. We disagree. In *Halverson*, we held that the "appellant bears the burden of establishing a public right violation." 309 P.3d at 797 (citing *Sublett*, 176 Wn.2d at 75). Further, appellants bear the burden of perfecting the record for appellate review. RAP 9.2(b); *see also State v. Bennett*, 168 Wn. App. 197, 207 n.9, 275 P.3d 1224 (2012). We turn to whether Miller has met these burdens.

The only evidence in the record before us concerning the trial court's pretrial in-chambers conference is the following statement by the trial court: "The statute we were talking about in chambers pretrial, with respect to what a person is obligated to do, with respect to abandoned or found property, the entire chapter is RCW 63.21.010 and that's for the benefit of both defense and prosecution." RP (Jan. 26, 2012) at 22. This single statement by the trial court reveals little as to the nature of the challenged in-chambers conference apart from discussing RCW 63.21.010. On this sparse record, Miller asserts that the trial court's pretrial discussion of RCW 63.21.010 was likely adversarial in nature and, thus, has been historically open to the public. But the record does not show that the in-chambers conference was adversarial; rather it shows merely that the trial judge and trial counsel discussed RCW 63.21.010. Additionally, the adversarial nature of a proceeding alone cannot determine whether such proceeding has historically been open to the public. For example, discussions on how to respond to jury questions during deliberations may be viewed as adversarial in nature, but our Supreme Court

has held that such proceedings have not historically been open to the public and, thus, fail the first prong of the experience and logic test. *Sublett*, 176 Wn.2d at 75-76.

Moreover, the cases Miller cites do not stand for the proposition that adversarial proceedings are historically open to the public. In *Press-Enterprise*, the United States Supreme Court applied the experience and logic test to determine that a "qualified First Amendment right of access to criminal proceedings" applied to a 41-day preliminary hearing conducted in California, at which the state presented evidence and at which "[t]he accused ha[d] the right to personally appear . . ., to be represented by counsel, to cross-examine hostile witnesses, to present exculpatory evidence, and to exclude illegally obtained evidence." 478 U.S. at 4, 12-13. In applying the experience prong, the *Press-Enterprise* Court noted that "preliminary hearings conducted before neutral and detached magistrates [of the type conducted in California] have been open to the public." 478 U.S. at 10. And in applying the logic prong, the *Press-Enterprise* Court noted,

> It is true that unlike a criminal trial, the California preliminary hearing cannot result in the conviction of the accused and the adjudication is before a magistrate or other judicial officer without a jury. But these features, standing alone, do not make public access any less essential to the proper functioning of the proceedings in the overall criminal justice process. Because of its extensive scope, the preliminary hearing is often the final and most important step in the criminal proceeding.

478 U.S. at 12. In holding that the "extensive" preliminary hearing satisfied the experience and logic test, the *Press-Enterprise* Court did not hold that every proceeding that is adversarial in nature is subject to the public trial right. And we cannot conclude that a pretrial discussion of a criminal statute is analogous to the extensive preliminary hearing proceedings examined in *Press-Enterprise*.

*United States v. Simone*, 14 F.3d 833, 838-40 (3d Cir. 1994), and *United States v. Criden*, 675 F.2d 550, 555 (3d Cir 1982), also do not assist Miller because the Third Circuit Court of Appeals did not find a historical analysis relevant to its determinations that a First Amendment right of access applied to preliminary criminal hearings (*Criden*) or to a posttrial hearing on juror misconduct (*Simone*). *United States v. Smith*, 787 F.2d 111 (3d Cir. 1986), also does not assist Miller. In holding that a common-law right of access to judicial records applied to "transcripts of sidebar or chambers conferences in criminal cases *at which evidentiary or other substantive rulings have been made*," the *Smith* court did not endorse a broad right of public access to any adversarial proceeding. 787 F.2d at 115 (emphasis added).

In short, the cases Miller cites in support of the broad proposition that adversarial proceedings have historically been open to the public are unavailing. Accordingly, Miller has failed to meet his burden to satisfy the first prong of the experience and logic test and, thus, he cannot show that the public trial right attached to the pretrial conference here.

B.     DISCUSSION OF JURY INSTRUCTIONS

Next, Miller asserts that the trial court violated his and the public's right to an open and public trial by discussing proposed jury instructions in chambers. Again, we disagree. In holding that the trial court's in-chambers consideration of a jury question did not violate the defendants' public trial rights, the *Sublett* lead plurality opinion noted that proceedings addressing jury questions are "similar in nature to proceedings regarding jury instructions in general." 176 Wn.2d at 75. The lead plurality opinion further noted that jury instruction conferences have not historically been held in an open courtroom, stating,

> Historically, such proceedings have not necessarily been conducted in an open courtroom. Jury instructions are covered by CrR 6.15. Proposed instructions are

> submitted in writing at least three days before the start of trial. CrR 6.15(a). We are aware that, quite often, counsel discuss the instructions with the court during an informal proceeding. But before instructing the jury, counsel is to be given the opportunity to object in the absence of the jury. CrR 6.15(c). Any objections to the instructions, as well as the grounds for the objections, must be put in the record to preserve review. *Schmidt v. Cornerstone Inv., Inc.,* 115 Wn.2d 148, 162-63, 795 P.2d 1143 (1990); *Goehle v. Fred Hutchinson Cancer Research Ctr.,* 100 Wn. App. 609, 615-17, 1 P.3d 579 (counsel has duty to lodge formal objections even if instructions discussed during informal hearing), *review denied,* 142 Wn.2d 1010 (2000). Both CrR 6.15(a) and CrR 6.15(c) have been in effect, in almost identical form, since 1973. We have found no challenges to either of these sections of the rule or, prior to the rule's enactment, any case requiring the discussion of jury instructions to be held in open court.

*Sublett,* 176 Wn.2d at 75-76.[7] Accordingly, we hold that the trial court's in-chambers conference to discuss jury instructions fails the experience prong of the *Sublett* test and does not constitute a closure for which the trial court was required to conduct a *Bone-Club* analysis.

RIGHT TO BE PRESENT

Next, Miller contends that the trial court's in-chambers discussion with counsel before trial violated his right to be present during a critical stage of his trial.[8] Because the record is unclear as to whether Miller was present during the trial court's chambers conference, he fails to show that his constitutional right to be present at a critical stage of the trial was violated.

A criminal defendant has the constitutional right to be present at all critical stages of trial. *State v. Irby,* 170 Wn.2d 874, 880-81, 246 P.3d 796 (2011). But a criminal defendant "does not have a right to be present during in-chambers or bench conferences between the court and

---

[7] Justice Stephens's concurring opinion similarly compared conferences to resolve jury questions regarding instructions with conferences addressing jury instructions in the first instance. *Sublett,* 176 Wn.2d at 141 (Stephens, J., concurring).

[8] Miller does not assert that the trial court's in-chambers meeting to discuss jury instructions violated his right to be present.

counsel on legal matters, at least where those matters do not require a resolution of disputed facts." *In re Pers. Restraint of Lord*, 123 Wn.2d 296, 306, 868 P.2d 835, 870 P.2d 964 (citations omitted), *cert. denied*, 513 U.S. 849 (1994). Miller has the burden of providing an adequate record of the challenged proceeding to allow us to determine whether the proceeding constituted a critical stage of the trial for which Miller had a right to be present. RAP 9.2(b); *Bennett*, 168 Wn. App. at 207 n.9. We review de novo whether the defendant's right to be present has been violated. *Irby*, 170 Wn.2d at 880.

Here the trial court's single statement regarding a pretrial in-chambers discussion does not reveal whether Miller was present during the discussion. And even assuming that Miller was excluded from the in-chambers conference, the record fails to show whether trial court and counsel addressed anything beyond purely legal matters that did not require a resolution of disputed facts. Accordingly, on this record, Miller cannot show that his right to be present at a critical stage of trial was violated by the trial court's pretrial in-chambers discussion.

SUFFICIENCY OF THE EVIDENCE

Next, Miller argues that insufficient evidence supported his false statement in application for or assignment of a certificate of title conviction. Specifically, Miller argues that the State failed to present evidence that he (1) made a false statement and (2) that such false statement was made in application for a certificate of title.

"The test for determining the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). All "reasonable inferences from the evidence must be drawn in favor of the State and interpreted

11

most strongly against the defendant." *Salinas*, 119 Wn.2d at 201. "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *Salinas*, 119 Wn.2d at 201. Circumstantial evidence and direct evidence are deemed equally reliable. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). "Credibility determinations are for the trier of fact and cannot be reviewed on appeal." *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

To convict Miller for making a false statement in application for or assignment of a certificate of title, the State had to prove beyond a reasonable doubt the elements of former RCW 46.12.210 (2003). Former RCW 46.12.210 provides in relevant part, "Any person who knowingly makes any false statement of a material fact, either in his or her application for the certificate of ownership or in any assignment thereof . . . is guilty of a class B felony."

A.    FALSE STATEMENT

Miller first contends that the State failed to present sufficient evidence that he had made a false statement. Specifically, Miller contends that his statement, "[t]railer was left on my property, attempted to get ahold [sic] of owner of record by certified mail with return receipt with no reply," was literally true because Cole did not reply to his certified letter in writing. Ex. 4. We disagree.

Former RCW 46.12.210 does not define the word "false." Accordingly, we ascertain the word's plain meaning as set forth in a standard dictionary. *State v. Sullivan*, 143 Wn.2d 162, 175, 19 P.3d 1012 (2001). *Black's Law Dictionary* defines "false" as "1. Untrue. . . . . 2. Deceitful; lying. . . . 3. Not genuine; inauthentic." BLACK'S LAW DICTIONARY 677 (9th ed. 2009). Miller argues that the rule of lenity requires this court to interpret "false" as meaning

"untrue" and that a merely deceitful statement is insufficient to uphold his conviction. We accept for the sake of Miller's argument that former RCW 46.12.210 required a literally untrue statement as opposed to a merely deceptive statement; nonetheless, the State presented sufficient evidence that Miller made a false statement when he wrote on his registration application that he received "no reply" from the tractor-trailer's owner of record. The State presented evidence that after receiving Miller's letter, Cole called Miller and met with Miller in person. Further, the State's evidence showed that Cole had called Miller and met with him before Miller made the statement at issue. Accordingly, any reasonable jury could conclude that Miller's statement that he received "no reply" was literally untrue.

B.    CERTIFICATE OF TITLE

Miller also contends that the State failed to present sufficient evidence that his false statement was made in application for a certificate of title. Specifically, Miller argues that the "Bonded Title or Three-Year Registration Without Title Affidavit" form in which he made his false statement does not qualify under former RCW 46.12.210 as an "application for a certificate of title." We disagree.

Under former RCW 46.12.151(1) (1990), the DOL may issue a certificate of registration but shall "[w]ithhold issuance of a certificate of ownership for a period of three years or until the applicant presents documents reasonably sufficient to satisfy [DOL] as to the applicant's ownership of the vehicle and that there are no undisclosed security interests in it." Although this process required Miller to wait three years before receiving ownership of Cole's tractor-trailer, his registration with title affidavit was nonetheless an essential part of applying for a certificate

13

No. 43215-3-II

of title to Cole's tractor-trailer. Accordingly, we hold that the State presented sufficient evidence to sustain his false statement in application for or assignment of a certificate of title conviction.

JUDICIAL COMMENT ON THE EVIDENCE

Finally, Miller argues that the trial court improperly commented on the evidence by instructing the jury on the procedure for legally claiming found property. We disagree.

Article IV, section 16 of the Washington State Constitution states, "Judges shall not charge juries with respect to matters of fact, nor comment thereon, but shall declare the law." This provision's purpose is to prevent the jury from being influenced by knowledge conveyed to it by the court as to the court's opinion of the submitted evidence. *State v. Elmore*, 139 Wn.2d 250, 275, 985 P.2d 289 (1999), *cert. denied*, 531 U.S. 837 (2000). To constitute a comment on the evidence, it must appear that the trial court's attitude toward the merits of the cause is reasonably inferable from the nature or manner of the court's statements. *Elmore*, 139 Wn.2d at 276; *see also State v. Ciskie*, 110 Wn.2d 263, 283, 751 P.2d 1165 (1988) (an impermissible comment on the evidence is an indication to the jury of the judge's personal attitudes toward the merits of the cause).

A jury instruction may be an improper comment on the evidence. *See, e.g., State v. Levy*, 156 Wn.2d 709, 721-23, 132 P.3d 1076 (2006). But a jury instruction is not an impermissible comment on the evidence when sufficient evidence supports it and the instruction is an accurate statement of the law. *State v. Johnson*, 152 Wn. App. 924, 935, 219 P.3d 958 (2009) (citing *State v. Hughes*, 106 Wn.2d 176, 193, 721 P.2d 902 (1986)); *see also Ciskie*, 110 Wn.2d at 282-83.

Here the trial court gave the following jury instruction based on RCW 63.21.010:

14

A person may lawfully claim found property only if the following circumstances are satisfied:

(1)      the owner of the property is unknown;

(2)      within seven days of the finding, the finder acquires a signed statement setting forth an appraisal of the current market value of the property prepared by a qualified person engaged in buying or selling like items or by a district court judge; and

(3)      within seven days of the find, the finder reports the find of property and surrenders, if requested, the property and a copy of the evidence of the value of the property to the chief law enforcement officer, or his or her designated representative, of the governmental entity where the property was found, and serves written notice upon the officer of the finder's intent to claim the property if the owner does not make out his or her right to it.

If circumstances (1), (2), and (3) are satisfied, the found property becomes the property of the finder sixty days after the find was reported to the appropriate officer if no owner has been found, or sixty days after the final disposition of any judicial or other official proceeding involving the property, whichever is later.

If any one of circumstances (1), (2), or (3) are not satisfied, the finder forfeits all right to the property.

A finder's claim to found property is extinguished if the owner satisfactorily establishes, within sixty days after the find was reported to the appropriate officer, the owner's right to possession of the property.

Clerk's Papers (CP) at 50.[9] Miller asserts that the trial court judge "signaled his belief" that Miller was guilty by giving the instruction because the instruction was unsupported by the evidence at trial.[10] Br. of Appellant at 17. But Miller testified at trial that he had an ownership interest in the tractor-trailer based on Cole abandoning it on his property. Thus, sufficient

---

[9] The trial court also instructed the jury as follows:

Our state constitution prohibits a trial judge from making a comment on the evidence. It would be improper for me to express, by words or conduct, my personal opinion about the value of testimony or other evidence. I have not intentionally done this. If it appeared to you that I have indicated my personal opinion in any way, either during trial or in giving these instructions, you must disregard this entirely.

CP at 31. We presume that the jury followed this instruction. *State v. Robinson*, 146 Wn. App. 471, 483, 191 P.3d 906 (2008).

[10] Miller does not assert that the jury instruction was an incorrect statement of the law.

evidence was presented at trial to warrant the above instruction because it allowed the State to rebut Miller's assertion that he had rightfully claimed title to the abandoned tractor-trailer. Accordingly, we hold that the trial court did not impermissibly comment on the evidence by giving the challenged jury instruction.

We affirm.

QUINN-BRINTNALL, J.

We concur:

HUNT, P.J.

MAXA, J.