FILED
COURT OF APPEALS
DIVISION II
2014 DEC 16 AM 8: 37
STATE OF WASHINGTON
BY
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| THE STATE OF WASHINGTON, | No. 45930-2-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| KYLE S. PARKER, | |
| Appellant. | |

MAXA, J. — Kyle Parker appeals his conviction for forgery based on his attempt to pass a counterfeit $50 bill at a gas station. He argues that the State failed to present sufficient evidence to prove that he knew the bill was counterfeit and that he intended to defraud the gas station when he attempted to use it. We disagree, and affirm Parker's conviction.

## FACTS

On October 22, 2013, Parker entered a Chevron gas station. The clerk knew Parker as a regular customer. She noticed that Parker was acting nervous, and even asked what was wrong with him. Parker gave a $50 bill to the clerk to purchase some beer.

The clerk thought the bill's texture felt funny – soft like it had been through a dryer – and noticed that the back was a different color green than genuine money while the front was the normal color of money. She testified that it was obvious that the bill was not real as soon as she touched it. The clerk scanned the bill through a counterfeit-checking machine several times in Parker's presence and the bill was rejected by the

machine each time. The clerk asked Parker if he had anything else to pay with because she was not going to accept the bill. Parker took the bill and left the gas station.

Parker then went to a nearby Shell gas station. The clerk there also knew Parker as a regular customer. Parker tried to use the same $50 bill to purchase some beer and a bag of spice. Even though the Chevron clerk had rejected the $50 bill moments earlier, Parker did not indicate that the bill might not be genuine when he handed it to the clerk at the Shell gas station. The clerk noticed that when Parker handed her the money he looked a little more nervous than he normally would. The clerk testified that as soon as she touched the bill it did not feel normal. She held up the bill and saw that it was missing the security strip.

The clerk marked the bill with a counterfeit-checking pen and the mark turned brown, indicating that the bill was fake. The clerk told Parker that the bill was not real, she was keeping it, and would have to report it. Parker left the store very quickly and drove away.

The State charged Parker with two counts of forgery. At trial the two gas station clerks testified to the facts above. Detective Corey Butcher of the Centralia Police Department compared Parker's bill to a genuine $50 bill. He testified that Parker's bill lacked the security features of the genuine bill and opined that the bill was counterfeit.

Parker testified that he did not know the bill was counterfeit and received it as change from a man who worked on his car. He stated that when the machine at the Chevron gas station rejected the $50 bill the clerk told him that she did not know if the machine was working properly. This testimony was inconsistent with the clerk's testimony. She testified that the machine was 99 percent accurate. Parker also testified

that the Chevron clerk told him that she would not take the bill "because if it turned out to be fake it would come out of her pocket." Verbatim Report of Proceedings (Jan. 23, 2014) at 85.

The jury found Parker not guilty of forgery based on his attempt to pass the bill at the Chevron gas station. The jury found Parker guilty of forgery based on his attempt to pass the bill at the Shell gas station. Parker appeals.

ANALYSIS

Parker argues that there was insufficient evidence at trial to sustain the jury's verdict finding him guilty of forgery. Specifically, Parker argues the State failed to prove that (1) he knew the bill was counterfeit, and (2) he intended to defraud the gas station when he attempted to use it. We hold that the State presented sufficient evidence to support the jury's verdict.

The test for determining the sufficiency of the evidence is whether, after viewing the evidence and all reasonable inferences from it in the light most favorable to the State, a rational trier of fact could find each element of the crime proved beyond a reasonable doubt. *State v. Rose*, 175 Wn.2d 10, 14, 282 P.3d 1087 (2012). A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom. *Rose*, 175 Wn.2d at 14. Credibility determinations are made by the trier of fact and not subject to review. *State v. Miller*, 179 Wn. App. 91, 105, 316 P.3d 1143 (2014). Circumstantial and direct evidence are equally reliable. *Miller*, 179 Wn. App. at 105.

To convict Parker of forgery, the State had to prove that (1) Parker possessed, offered, or put off as true a written instrument that had been falsely made; (2) he knew

3

the written instrument had been falsely made; and (3) he acted with the intent to injure or defraud. RCW 9A.60.020. Parker does not dispute that the bill was counterfeit.

There was sufficient evidence to support the jury's finding that Parker knew the $50 bill was counterfeit when he tried to use it at the Shell gas station. First, the Chevron clerk testified that it was immediately obvious that the bill was not real because the texture was different than a normal bill and the back was a different color than the front. The Shell clerk also testified that she noticed as soon as she touched the bill that it did not feel normal. The jury could infer from this testimony that Parker also knew when he touched the bill that it was not genuine.

Second, the Chevron clerk ran the $50 bill through a counterfeit-checking machine multiple times in Parker's presence, and the machine rejected the bill each time. The clerk then told Parker that she would not accept the bill. Because the bill was tested in Parker's presence and the clerk refused to accept the bill, the jury could reasonably infer that Parker knew the bill was counterfeit when he left the Chevron gas station and went to the Shell gas station. Parker claimed that the clerk told him that the machine may not have been working properly, but the jury was free to find this testimony not credible in light of the clerk's testimony that the machine was 99 percent accurate.

Third, both clerks testified that Parker was acting nervously when handing them the $50 bill. And Parker left the Shell gas station very quickly after the bill was rejected a second time. This evidence supports an inference that Parker knew the bill was counterfeit.

Parker did testify that he did not know the bill was counterfeit. However, we defer to the jury on issues resolving conflicting testimony and assessing the credibility of witnesses. *Miller*, 179 Wn. App. at 105.

There also was sufficient evidence to support the jury's finding that Parker passed the $50 bill with the intent to injure or defraud. If Parker knew that the bill was fake, he obviously knew that he would be defrauding the store by using the bill to purchase goods. And Parker did not alert the Shell clerk that the bill had been rejected or that there were questions about its genuineness. The jury could infer from this fact that Parker intended to defraud the Shell gas station.

Viewing all of the evidence in the light most favorable to the State, we hold that the evidence was sufficient to support the jury's verdict finding Parker guilty of forgery. Accordingly, we affirm Parker's conviction.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, J.

We concur:

WORSWICK, P.J.

SUTTON, J.