FILED
COURT OF APPEALS
DIVISION II

2015 AUG 11 AM 9: 10

STATE OF WASHINGTON

BY_____
        DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 45941-8-II |
| Respondent, | |
| v. | |
| BRETT CHARLES EVERETTE, | UNPUBLISHED OPINION |
| Appellant. | |

MAXA, P.J. — Brett Everette appeals his convictions for attempted first degree kidnapping, first degree unlawful possession of a firearm, and felony harassment. We hold that (1) the State presented sufficient evidence to prove that Everette committed the "abduct" element of attempted first degree kidnapping; (2) the State presented sufficient evidence that Everette was in unlawful possession of a firearm; (3) the trial court was not required to include a unanimity instruction because Everette's multiple threats constituted a continuing course of conduct; and (4) the trial court did not abuse its discretion in denying Everette's untimely motion for a new trial. Accordingly, we affirm Everette's convictions.

## FACTS

Everette and Kendra Swanger were acquaintances of Joey Sanchez-Juarez. Sanchez-Juarez was angry at Swanger because she had taken a car he had received in a drug deal and returned it to the original owner, her boyfriend's father. Sanchez-Juarez repeatedly attempted to contact Swanger by text, phone, and social media. Sanchez-Juarez, Everette, and others developed a plan to find Swanger and get Sanchez-Juarez's car back, which included potentially harming her.

On August 12, 2013, Everette came to Maria Johnson's house looking for Swanger and Bradley Martin, Swanger's boyfriend. Johnson told him that they were not in her house. In fact, Swanger and Martin were in a back bedroom of Johnson's house with the door closed. Swanger eventually let Everette into the room. Everette asked Swanger where Sanchez-Juarez's car was, and she replied that she did not know. Everette became angry, grabbed Swanger's hair and neck, and threw her onto the bed.

According to Swanger, Everette flashed a gun and pointed the gun at her head and body.[1] Everette stated that he was not afraid of smashing in Swanger's face, killing her, putting "some new holes in her head" with his friend's shotgun, or going back to prison. Report of Proceedings (RP) (Dec. 19, 2013) at 17. In addition, Everette told everyone in the room that they could not leave. Swanger did not feel free to leave. Everette made several phone calls, in one instructing someone to tell Sanchez-Juarez to come to Johnson's house.

When Everette briefly left the room, Martin jammed a skateboard underneath the bedroom door and he and Swanger jumped out the bedroom window. Swanger ran from Johnson's house into an alley. Sanchez-Juarez drove up the alley, pulled up to Swanger, pointed a shotgun at her, and asked where his car was. Sanchez-Juarez then jumped out of the car, pulled Swanger to the ground, and kicked her. Sanchez-Juarez and another person in the car started dragging Swanger back to the car before letting her go and driving off.

---

[1] Martin did not see a gun, but testified that he observed Everette grabbing at the front of his pants, which gave Martin the impression that Everette was keeping a weapon in his pants. Martin testified he believed Everette had a gun.

The State charged Everette with attempted first degree kidnapping with a firearm enhancement, first degree unlawful possession of a firearm, and felony harassment with a firearm enhancement. The case proceeded to trial, and the jury found Everette guilty on all charges on December 20, 2013. On February 10, 2014, the trial court sentenced Everette to life without the possibility of early release on the attempted first degree kidnapping and first degree unlawful possession of a firearm convictions, and a standard range of 116 months for the felony harassment conviction.

On February 12, 2014, Everette filed a pro se motion for a new trial. He argued that he had unsuccessfully tried to contact his trial attorney during preparations for trial and that newly discovered information demonstrated that there were no phone records supporting witness testimony that Everette had made calls to Sanchez-Juarez. Everette filed a notice of appeal on February 14, 2014. On February 25, 2014, Everette submitted additional pro se motions in support of his motion for a new trial. CP 150-63. Because Everette claimed ineffective assistance of counsel, the trial court appointed new counsel, who filed a second notice of appeal on March 10, 2014. Everette's new counsel also submitted a memorandum in support of his motions for a new trial, which seemed to argue that counsel required additional time to investigate Everette's claims.

The trial court denied Everette's motion for a new trial because (1) it was not filed within the time limits specified by CrR 7.5(b) and there was no basis to extend the time for filing, and (2) CrR 7.5(a)(3) did not apply because Everette did not produce newly discovered evidence and the evidence would not have changed the outcome of the trial. CP 189. In addition, the trial court concluded that it did not have jurisdiction to address the issues Everette raised in his motions because he already had filed a notice of appeal and therefore the trial court was not

permitted to rule on motions without receiving permission from the Court of Appeals under RAP 7.2(e).

Everette appeals his convictions and the trial court's denial of his motion for a new trial.

ANALYSIS

A.    SUFFICIENT EVIDENCE

Everette challenges whether the State presented sufficient evidence for a reasonable jury to find him guilty of the charges of attempted first degree kidnapping and first degree unlawful possession of a firearm. We hold that there was sufficient evidence for a reasonable jury to convict Everette of both charges.

The test for determining sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt. *State v. Homan*, 181 Wn.2d 102, 105, 330 P.3d 182 (2014). In a sufficiency of the evidence claim, the defendant admits the truth of the State's evidence and all reasonable inferences drawn from that evidence. *Id.* at 106. Credibility determinations are made by the trier of fact and are not subject to our review. *State v. Miller*, 179 Wn. App. 91, 105, 316 P.3d 1143 (2014). Circumstantial and direct evidence are equally reliable. *Id.*

1.    Attempted First Degree Kidnapping

Everette challenges the sufficiency of the State's evidence on one element of attempted first degree kidnapping: whether Everette made a substantial step toward intentionally "abducting" Swanger. We hold that the State presented sufficient evidence to prove this element.

Under RCW 9A.40.020(1), a person is guilty of kidnapping in the first degree if he or she "intentionally abducts another person with intent: . . . (c) To inflict bodily injury on him or her;

4

or (d) To inflict extreme mental distress on him, her, or a third person." RCW 9A.40.010(1) defines "abduct" as restraining a person by either "(a) secreting or holding him or her in a place where he or she is not likely to be found, or (b) using or threatening to use deadly force."[2] A person is guilty of criminal attempt to commit a crime if "with intent to commit a specific crime, he or she does any act which is a substantial step toward the commission of that crime." RCW 9A.28.020(1).

Everette concedes that the State presented evidence that he restrained Swanger, but he argues that the State failed to present evidence that he attempted to hold Swanger in a place that she was not likely to be found because the bedroom in Johnson's house was not such a place. However, this argument ignores the fact that RCW 9A.40.010(1) allows the State to prove abduction by establishing that the defendant restrained a person using or threatening to use deadly force.

Here, the evidence showed that Everette threatened to use deadly force on Swanger. Both Swanger and Martin testified that Everette made several threats involving deadly force, including threatening to kill Swanger and threating to put "some new holes in her head," while restraining her in Johnson's bedroom. RP (Dec. 19, 2013) at 17. We hold that this evidence was sufficient for a reasonable jury to find that Everette restrained Swanger by threatening her with deadly force, and therefore that sufficient evidence was presented for a reasonable jury to find that he "abducted" her.

---

[2] RCW 9A.40.010 was recently amended. *See* LAWS OF 2014, ch. 52, § 2. The amendment did not impact the subsection that we rely on for our analysis.

2. Unlawful Possession of a Firearm

Everette argues that the State failed to present sufficient evidence of his unlawful possession of a firearm because only Swanger testified to actually seeing him in possession of a firearm. We hold that the State presented sufficient evidence of Everette's unlawful possession of a firearm.

Under RCW 9.41.040(1)(a), a person "is guilty of the crime of unlawful possession of a firearm in the first degree, if the person owns, has in his or her possession, or has in his or her control any firearm after having previously been convicted" of any serious offense.[3] The State must prove that the defendant knowingly owned, possessed, or controlled the firearm. *State v. Williams*, 158 Wn.2d 904, 909-10, 148 P.3d 993 (2006). Everette stipulated at trial that he had previously been convicted of a serious offense. Therefore, the issue is whether there was sufficient evidence to establish that he knowingly owned, possessed, or controlled a firearm.

The State presented evidence that Swanger saw Everette possessing a handgun. Martin did not see Everette in possession of a gun, but he testified that he believed Everette possessed a handgun because he frequently reached down into the top of his pants.

Everette argues that Swanger's testimony was inconsistent with Johnson's and Martin's testimony. Johnson testified that she did not see Everette with a gun when he came into her house, RP (Dec. 18, 2013) at 156, and Martin testified that he did not see a gun. However, we defer to the trier of fact on decisions resolving conflicting testimony and the credibility of witnesses. *Miller*, 179 Wn. App. at 105. We hold that based on Swanger's testimony, the State

---

[3] RCW 9.41.040 was recently amended. *See* LAWS OF 2014, ch. 111, § 1. The amendments did not add to or subtract from the language of RCW 9.41.040(1)(a).

presented sufficient evidence for a reasonable jury to find beyond a reasonable doubt that Everette possessed a firearm.

**B. UNANIMITY INSTRUCTION – FELONY HARASSMENT**

Everette argues that his conviction of felony harassment violated his right to a unanimous verdict because the jury could have convicted him based on multiple purported threats. We hold that these acts were part of a continuing course of conduct and therefore there was no need for a unanimity instruction.

We review de novo whether a unanimity instruction is required. *See State v. Furseth,* 156 Wn. App. 516, 520, 233 P.3d 902 (2010). Because the failure to give a unanimity instruction is an error of constitutional magnitude, a defendant may raise the issue for the first time on appeal. *State v. Locke,* 175 Wn. App. 779, 802, 307 P.3d 771 (2013), *review denied,* 179 Wn.2d 1021 (2014).

To convict Everette for felony harassment, one of the elements that the State had to prove beyond a reasonable doubt was that Everette knowingly threatened to kill Swanger. RCW 9A.46.020(1)(a)(i), (2)(b); *State v. Mills,* 154 Wn.2d 1, 10-11, 109 P.3d 415 (2005). Everette argues that there was evidence of three possible threats: (1) his threat to kill Swanger, (2) his threat to shoot Swanger in the head, (3) and his gesturing with the handgun.[4] He, therefore, argues that a unanimity instruction was required.

---

[4] Everette also argues that the jury could have convicted him of felony harassment based on Sanchez-Juarez pushing Swanger to the ground and attempting to drag her to the car, and Sanchez-Juarez's implied threat to shoot Swanger when he pointed a shotgun at her. However, the jury instructions regarding felony harassment did not allow the jury to convict based on an accomplice liability theory. We presume the jury followed the trial court's instructions unless demonstrated otherwise. *State v. Curtiss,* 161 Wn. App. 673, 698, 250 P.3d 496 (2011). Therefore, we reject this claim.

For a conviction to be constitutionally valid, a unanimous jury must conclude that the accused committed the criminal act charged. *State v. Kitchen*, 110 Wn.2d 403, 411, 756 P.2d 105 (1988), *abrogated on other grounds, In re Pers. Restraint of Stockwell*, 179 Wn.2d 588, 316 P.3d 1007 (2014). When multiple incidents are alleged, any one of which could constitute the crime charged, the jury must unanimously agree on which incident constitutes the crime. *Id.*. Under these circumstances, unless the State elects which incident it will rely on for the conviction, a trial court must instruct the jury that all 12 jurors must agree that the same underlying criminal act has been proved beyond a reasonable doubt. *Id.*.

However, the defendant is not entitled to a unanimity instruction if the evidence shows that multiple acts constitute a continuing course of conduct. *Locke*, 175 Wn. App. at 803. A continuing course of conduct involves an ongoing enterprise with a single objective. *Id.* We evaluate the facts in a common sense manner to determine whether a defendant's multiple acts constitute a continuing course of conduct. *Id.*

A continuing court of conduct exists where "multiple acts of the charged crime were committed with a single purpose against one victim in a short period of time." *Id.* In *State v. Crane*, the Supreme Court applied the continuing course of conduct exception to multiple acts of assault against a victim over a two-hour period. 116 Wn.2d 315, 330, 804 P.2d 10 (1991), *overruled on other grounds In Pers. Restraint of Andress*, 147 Wn.2d 602, 56 P.3d 981 (2002). Similarly, in *State v. Marko*, we held that a defendant's statements to two different people over 90 minutes constituted a continuing course of conduct for the crime of intimidating a witness. 107 Wn. App. 215, 221, 27 P.3d 228 (2001).

Here, Everette's threats occurred over a short period of time, against the same person, and in the same place. Therefore, we hold that the threats constituted a continuing course of

8

conduct and that no unanimity instruction was required. Accordingly, we hold that the trial court did not err when it did not give a unanimity instruction for the felony harassment charge.

C.      DENIAL OF NEW TRIAL MOTION

Everette argues that the trial court erred in denying his motion for a new trial on the grounds that the motion was untimely. Everette argues the trial court erred by not extending the time for filing his motion. We disagree.

We review for an abuse of discretion a trial court's denial of a motion for a new trial. *State v. Pete*, 152 Wn.2d 546, 552, 98 P.3d 803 (2004). A trial court abuses its discretion by reaching a conclusion no reasonable judge would reach. *Id.* We will reverse a trial court's denial of a new trial motion only where the moving party clearly shows that the trial court abused its discretion. *See id.*

CrR 7.5(b) provides that a motion for a new trial must be served and filed within 10 days after the verdict. The rule also provides that the court "*in its discretion*" may extend this time. CR 7.5(b) (emphasis added).

Here, Everette's motion for a new trial was untimely; he filed his first pro se motion for a new trial several weeks after the jury's guilty verdict. The trial court had the discretion under CrR 7.5(b) to extend the time for filing the motion, but the trial court chose not to extend the time. Everette provides no explanation for why the trial court should have considered the untimely motion. Therefore, we hold that the trial court did not abuse its discretion in denying the motion on the basis of untimeliness.[5]

---

[5] Everette also argues the trial court erred when it found that it had lost jurisdiction to decide his motion for a new trial because Everette already had filed a notice of appeal. We agree. *See* RAP 7.2. However, because the trial court also denied the motion based on untimeliness, this error is harmless.

Everette also assigns error to the trial court's conclusions that (1) CrR 7.5(a)(3) did not apply because Everette did not present newly discovered evidence and (2) even if Everette's attorney had presented the evidence, it would not have changed the outcome of the trial. However, Everette fails to provide any argument showing that these conclusions are erroneous in any material respect. Therefore, these assignments of error are waived. RAP 10.3(a)(6), *Ames v. Ames*, 184 Wn. App. 826, 850, 340 P.3d 232 (2014), *review denied*, No. 91511-3 (Wash. July 8, 2015).

We affirm Everette's convictions.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, P J.

We concur:

LEE, J.

SUTTON, J.