# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>　　　　　Respondent,<br><br>　　v.<br><br>TRYGVE J. NELSON,<br><br>　　　　　Appellant. | No. 48728-4-II<br><br><br>UNPUBLISHED OPINION |

MAXA, A.C.J. – Trygve Nelson appeals his convictions of third degree assault and third degree malicious mischief, challenging the sufficiency of the evidence. We hold that sufficient evidence supports his convictions. We also hold, as the State concedes, that the trial court erred in failing to consider Nelson's ability to pay before imposing discretionary legal financial obligations (LFOs). Therefore, we affirm Nelson's convictions, but reverse the imposition of discretionary LFOs and remand for further proceedings regarding the imposition of LFOs.

## FACTS

On June 30, 2013, Nelson was admitted to the Providence Centralia hospital emergency room because of severe intoxication. At about 4:00 AM the next morning, Nelson motioned to Trevyn DeLapp, the charge nurse, to come to his room. As DeLapp approached, Nelson pointed to the floor beside his bed where he had defecated. In what DeLapp described as a boastful manner, Nelson said that DeLapp would have to clean up the floor. DeLapp told Nelson that what he had done was inappropriate and that he would need to clean up the defecation himself.

Nelson responded that he was not going to clean up the defecation and that he was leaving the hospital. DeLapp explained that Nelson was on a medical, safety hold and that he could not leave until a doctor had discharged him. Nelson then grabbed his clothing, lowered his shoulder, and charged into DeLapp, who was standing in the doorway. The collision nearly knocked DeLapp into a stretcher carrying a newly arrived emergency room patient. DeLapp grabbed Nelson and walked him back into the room with the help of another nurse, Michael Ross. Nelson swung several times at Ross, hitting him in the face and on his shoulder. The hospital reported the incident to the police, who arrested Nelson. The nursing and housekeeping staff then cleaned the floor.

The State charged Nelson with two counts of third degree assault (one regarding DeLapp and the other regarding Ross) and one count of third degree malicious mischief. At trial, Nelson asserted that the nurses were not performing nursing duties at the time of the incident because he had already been discharged. He never asserted that he acted in self-defense.

The jury found Nelson guilty on all counts. At the subsequent sentencing hearing, the trial court imposed discretionary LFOs of $1,881 without determining if Nelson had the present or future ability to repay them.

Nelson appeals his convictions and the trial court's imposition of LFOs.

## ANALYSIS

A. SUFFICIENCY OF THE EVIDENCE

1. Legal Principles

The test for determining sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt

beyond a reasonable doubt. *State v. Homan*, 181 Wn.2d 102, 105, 330 P.3d 182 (2014). In a sufficiency of the evidence claim, the defendant admits the truth of the State's evidence and all reasonable inferences drawn from that evidence. *Id.* at 106. Credibility determinations are made by the trier of fact and are not subject to review. *State v. Miller*, 179 Wn. App. 91, 105, 316 P.3d 1143 (2014). Circumstantial and direct evidence are equally reliable. *Id.*

### 2. Third Degree Assault Convictions

The State charged Nelson with two counts of third degree assault under former RCW 9A.36.031(1)(i) (2011), which requires the State to prove that Nelson assaulted "a nurse . . . who was performing his or her nursing . . . duties at the time of the assault." Nelson argues that the State failed to prove that DeLapp and Ross were performing nursing duties at the time of the alleged third degree assaults. He also argues that the State failed to disprove self-defense. We hold that the evidence was sufficient to uphold the assault convictions and that the State had no duty to disprove self-defense because Nelson did not raise the issue and there was no credible evidence that Nelson acted in self-defense.

### a. Sufficiency of the Evidence

Nelson argues that DeLapp and Ross were not performing nursing duties at the time of the assault because they had no legal authority to restrain him and therefore their actions in preventing him from leaving the room amounted to unlawful imprisonment.[1] However, Nelson

---

[1] Nelson argues that in order to justify the nurses' actions, the State was required to show that they had legal authority to detain him under Title 71.05 RCW or as a citizen's arrest. *State v. Garcia*, 146 Wn. App. 821, 829, 193 P.3d 181 (2008). Because we hold that sufficient evidence demonstrated that DeLapp and Ross were performing their nursing duties, we do not address these claims.

provides no support for the proposition that the absence of legal authority for an on-duty nurse's interaction with a patient negates a finding that the nurse was performing nursing duties.

Further, there was evidence that DeLapp and Ross were performing authorized nursing duties at the time of the assault. DeLapp testified that he was performing his official duties during his interactions with Nelson. He stated that shortly before the assault he told Nelson that he could not leave the hospital because a doctor was not ready to discharge him. DeLapp explained that even though law enforcement said that Nelson was free to leave, he was on a medical, safety hold because of his intoxication. A reasonable inference is that DeLapp was attempting to keep Nelson in his room because of that safety hold when he told Nelson he could not leave and stood in the doorway.

After Nelson assaulted DeLapp, Ross helped walk Nelson back to his bed and that is when Nelson punched Ross. A reasonable inference is that Ross was helping DeLapp enforce the safety hold. Ross testified that his interactions with Nelson were part of his duties.

During cross-examination, Ross testified that the decision to release Nelson had already been made and he was free to leave. But DeLapp testified that the discharge paperwork had not been completed. DeLapp's testimony, which is more favorable to the State, must be taken as true for sufficiency of the evidence purposes. *See Homan*, 181 Wn.2d at 106.

Considering the evidence in a light most favorable to the State, any reasonable juror could conclude that DeLapp and Ross were performing nursing duties at the time of the assaults. Accordingly, we hold that the State presented sufficient evidence to support both assault convictions.

b.     Self-Defense

Nelson argues that the State failed to show the absence of self-defense beyond a reasonable doubt even though the issue was never presented to the jury.  He claims that because DeLapp and Ross lacked legal authority to detain him, he was authorized to use reasonable force to resist the attempt to restrain him.

However, Nelson did not raise the issue of self-defense at trial.  He did not propose a self-defense instruction and did not argue self-defense.  Under these circumstances, Nelson cannot argue that the State should have presented evidence to disprove self-defense at trial.  As the court stated in *State v. McCullum*, "*Once the issue of self-defense is properly raised* . . . the absence of self-defense becomes another element of the offense which the State must prove beyond a reasonable doubt."  98 Wn.2d 484, 493-94, 656 P.2d 1064 (1983) (emphasis added).  Because Nelson did not properly raise the issue of self-defense, the State had no obligation to disprove it.

In any event, there was no evidence at trial that Nelson acted in self-defense.  A person acts in self-defense when he reasonably believes he is about to be injured and when the force used is not more than is necessary.  RCW 9A.16.020(3).  But a person may not use force to resist unlawful arrest when faced only with a loss of liberty and not an attempt to inflict injury.  *State v. Valentine*, 132 Wn.2d 1, 21, 935 P.2d 1294 (1997).  The evidence did not show that DeLapp and Ross were about to injure Nelson.

We reject Nelson's argument that the evidence was insufficient to support his convictions because the State did not disprove self-defense.

3. Third Degree Malicious Mischief Conviction

The State charged Nelson with third degree malicious mischief under RCW 9A.48.090(1)(a), which requires the State to prove that Nelson "knowingly and maliciously cause[d] physical damage to the property of another." Nelson argues that he did not injure or harm the emergency room floor and therefore there was no physical damage. We disagree.

Former RCW 9A.48.100(1) (1984) defined "physical damage" as "its ordinary meaning" and also to include "any diminution in the value of any property as the consequence of an act." The trial court instructed the jury, without objection, that physical damage "includes the reasonable cost of repairs to restore injured property to its former condition." Clerk's Papers at 28. The State presented testimony that the hospital room was "damaged" because cleaning the room so that it could be used for other patients involved expending time, labor, and hospital resources. In addition, the room could not be used until the room could be cleaned. This evidence supports a finding of physical damage under the ordinary meaning of the term and the unchallenged jury instruction. Accordingly, we hold that the State presented sufficient evidence to support the third degree malicious mischief conviction.

B. LEGAL FINANCIAL OBLIGATIONS

Nelson argues, and the State concedes, that the trial court failed to inquire into his present and future ability to pay before imposing LFOs. Such an inquiry is mandatory for discretionary LFOs. Former RCW 10.01.160(3); *State v. Blazina*, 182 Wn.2d 827, 838, 344 P.3d 680 (2015). Further, RCW 9.94A.777(1) provides that a court must determine whether a defendant suffering from a mental health condition has the means to pay before imposing any LFOs other than

restitution and a crime victim assessment. The evidence showed that Nelson had mental health issues.

We reverse the trial court's imposition of discretionary LFOs and remand for further proceedings regarding the imposition of LFOs.

## CONCLUSION

We affirm Nelson's convictions of third degree assault and third degree malicious mischief, but reverse the trial court's imposition of discretionary LFOs and remand for further proceedings regarding the imposition of LFOs.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
MAXA, A.C.J.

We concur:

_____
LEE, J.

_____
SUTTON, J.