# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 51592-0-II |
| Respondent. | |
| vs. | UNPUBLISHED OPINION |
| DICKY GALE SWING, | |
| Appellant. | |

MAXA, P.J. – Dicky Swing appeals his conviction of first degree child molestation. He claims that insufficient evidence supported his conviction and that the trial court imposed an unconstitutionally vague community custody condition that prohibited him from frequenting or loitering in places where children congregate. We affirm Swing's conviction, but we remand for the trial court to revise the community custody condition to include a non-exclusive list of places where children congregate.

## FACTS

On July 23, 2017, Swing was at Richard Lansford's home in Lacey. Swing was a family friend. Lansford's nine-year-old daughter LL was playing a game on her tablet while seated at the kitchen table when Swing approached her. He started kissing her on the cheek and the neck, and then started touching her. Both of his hands slid down her body, touching her breasts,

stomach, and legs. Swing then left the kitchen, but he returned and again kissed LL on the neck and touched her breasts, stomach, and legs.

LL told her father what had happened. According to Lansford, LL said that Swing was kissing her neck and then put his hands on her breasts and then moved his hands down toward her vaginal area. LL also told her father about another incident in which Swing had tried to touch her vagina while they were sitting on the couch.

Lansford immediately confronted Swing, who denied the accusations. Lansford had LL repeat her allegations in front of Swing, and he again denied touching her. Lansford asked Swing to leave and called the police. Eric Lever, a Lacey police officer, arrived and talked with LL. LL told him that Swing had kissed her and demonstrated how he rubbed her breasts and then moved his hands toward her groin/vaginal area. She also said it had happened before on the couch.

The State charged Swing with two counts of first degree child molestation. Lansford, Lever, and LL testified at trial consistent with the facts stated above. Lansford and Lever were allowed to testify about what LL had said under the child hearsay statute, RCW 9A.44.120. Swing testified that when he approached LL, he noticed that LL's hair was blocking her ability to see the screen on her tablet and so he hooked his finger around the hair and tucked it behind her ear. But he denied touching LL in any other way.

The jury found Swing guilty of one count of first degree child molestation for the incident in the kitchen but not guilty of the second count for the incident in the living room. The trial court imposed several community custody conditions, one of which required that Swing

"[n]ot frequent or loiter in areas where children congregate." Clerk's Papers (CP) at 161. Swing appeals his conviction and the imposition of the community custody condition.

ANALYSIS

A.    SUFFICIENCY OF THE EVIDENCE

Swing argues that the State failed to present sufficient evidence to prove that he committed first degree child molestation. Specifically, he argues that the State failed to prove that he touched LL for the purpose of satisfying his sexual desires. We disagree.

1.    Standard of Review

The test for determining sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt. *State v. Homan*, 181 Wn.2d 102, 105, 330 P.3d 182 (2014). In a sufficiency of the evidence claim, the defendant admits the truth of the State's evidence and all reasonable inferences drawn from that evidence. *Id.* at 106. Credibility determinations are made by the trier of fact and are not subject to review. *State v. Miller*, 179 Wn. App. 91, 105, 316 P.3d 1143 (2014). Circumstantial and direct evidence are equally reliable. *Id.*

2.    Legal Principles

In order to prove first degree child molestation, the State had to prove that Swing had sexual contact with LL. RCW 9A.44.083. "Sexual contact means any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desire of either party or a third party." RCW 9A.44.010(2). We look to the totality of the facts and circumstances present in determining whether the proof of sexual contact is satisfied. *State v. Harstad*, 153 Wn. App. 10, 21, 218 P.3d 624 (2009).

" 'Contact is 'intimate' within the meaning of the statute if the conduct is of such a nature that a person of common intelligence could fairly be expected to know that, under the circumstances, the parts touched were intimate and therefore the touching was improper.' " *Id.* (quoting *State v. Jackson*, 145 Wn. App. 814, 819, 187 P.3d 321 (2008)). "A jury may determine that 'parts of the body in close proximity to the primary erogenous areas' are intimate parts." *Harstad*, 153 Wn. App. at 21 (quoting *In re Welfare of Adams*, 24 Wn. App. 517, 521, 601 P.2d 995 (1979)). " 'Proof that an unrelated adult with no caretaking function has touched the intimate parts of a child supports the inference the touching was for the purpose of sexual gratification,' although we require additional proof of sexual purpose when clothes cover the intimate part touched." *Harstad*, 153 Wn. App. at 21 (quoting *State v. Powell*, 62 Wn. App. 914, 917, 816 P.2d 86 (1991)).

3.    Analysis

LL testified that Swing came up behind her in the kitchen, kissed her on the cheek and her neck and then touched her breasts, stomach, and legs. She also testified that he stopped, left the room, then came back and repeated the touching. Lansford and Lever gave similar consistent accounts about what LL told them.

It is undisputed that Swing touched LL's intimate parts. Her breasts and stomach are parts of a female child's body that would be considered private or intimate. Swing claims that he had a caretaking function in the Lansford household. He testified that he occasionally babysat LL and her sister. As a result, he claims that the inference the touching was for the purpose of sexual gratification does not apply and that there was no other evidence that the touching was for sexual gratification.

4

However, Lansford testified that while LL and Swing were friends, Swing never babysat or cared for LL and was not her caretaker. Therefore, the inference that Swing's touching was for sexual gratification applies.

In addition, there was other evidence that Swing's purpose was sexual gratification. After kissing LL, Swing moved his hands to LL's breasts and then down her stomach toward her vaginal area. There is no innocent explanation for this conduct. And Swing returned and touched LL more than once, suggesting deliberate behavior.

Considering all of the evidence and inferences in a light most favorable to the State, we conclude that the evidence was sufficient to find that Swing's touching of LL was done for the purpose of gratifying his sexual desires. Therefore, we hold that sufficient evidence supported Swing's conviction.

B.     COMMUNITY CUSTODY CONDITION

Swing challenges a community custody condition that he "[n]ot frequent or loiter in areas where children congregate." CP at 161. He claims this condition is unconstitutionally vague. We remand for the trial court to revise the condition.

A community custody condition "is unconstitutionally vague if (1) it does not sufficiently define the proscribed conduct so an ordinary person can understand the prohibition or (2) it does not provide sufficiently ascertainable standards to protect against arbitrary enforcement." *State v. Padilla*, 190 Wn.2d 672, 677, 416 P.3d 712 (2018). We review community custody conditions for an abuse of discretion. *Id.* A trial court abuses its discretion if it imposes an unconstitutional condition. *Id.*

A community custody condition "is not unconstitutionally vague merely because a person cannot predict with complete certainty the exact point at which his actions would be classified as prohibited conduct." *State v. Wallmuller,* 194 Wn.2d 234, 239, 449 P.3d 619 (2019) (citations omitted). Rather, the question is whether fair minded citizens have fair warning of the proscribed conduct. *Id.* And they do if "ordinary people can understand what is and is not allowed, and are protected against arbitrary enforcement." *Id.*

In *Wallmuller*, the Supreme Court addressed the constitutionality of a community custody condition that provided: "The defendant shall not loiter in nor frequent places where children congregate such as parks, video arcades, campgrounds, and shopping malls." *Id.* at 237. The court noted that the Court of Appeals in *State v. Irwin,* 191 Wn. App. 644, 364 P.3d 830 (2015) "properly recognized that the phrase 'where children . . . congregate' is vague standing on its own." *Wallmuller*, 194 Wn.2d at 243. But the court concluded that the phrase "modified by a nonexclusive list of places illustrating its scope" was sufficiently specific. *Id*. Therefore, the court upheld the condition. *Id.* at 245.

The condition at issue here does not include a nonexclusive list of places that Swing must avoid. Therefore, we remand for the trial court to add a list of nonexclusive places where children congregate to the community custody condition.

## CONCLUSION

We affirm Swing's conviction of first degree child molestation, but we remand for the trial court to revise the community custody condition prohibiting Swing from frequenting or loitering in places where children congregate.

No. 51592-0-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, P.J.

We concur:

GLASGOW, J.

CRUSER, J.